Irwin *v.* Byllesby Engineering and Management
Corp. et al., Appellants.

Argued April 22, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

450

*James J. Burns, Jr.,* of *Willmann, Burns & Sack,* for appellants.

*Robert L. Wallace,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1935:

The controversy in this workmen's compensation case had its inception in the filing by the claimant on June 14, 1932, of a petition, under Section 413 of the amendatory Act of June 26, 1919, P. L. 642, 661, as further amended by the Act of April 13, 1927, P. L. 186, 194, for the review of an original compensation agreement, numbered 2,270,789, and dated January 27, 1928, substantially upon the ground of a recurrence of disability.

The referee, after several hearings, made an award for partial disability, based upon a 50% loss of earning power, and directed that payments of compensation be made to claimant, at the rate of $15 per week, from January 19, 1928, (the seventh day after the accident) "and continuing to October 19, 1933, the end of the 300 week period, or a total sum of $4,500"; it was further ordered that the employer and its insurance carrier were entitled to take credit "in the amount of compensation already paid under the agreement."

Upon appeal by the defendants, first to the board and then to the court below, the board affirmed the action of the referee and the court below entered judgment upon the award. The present appeal is by the employer and its insurance carrier from that judgment.

Claimant is an electrician, and during the course of his employment was accidentally injured on January 12, 1928. Shortly thereafter the parties executed an open agreement for compensation for total disability, under Section 306 (a) and at the maximum rate of $15 per week, in which the accident was thus described: "As Mr. Irwin went upon roof to clear line he acci-

dentally threw chain on wrong bus, which caused a flash. After treating shock and giving first aid, patient was rushed to New Kensington Hospital." His injuries, as stated by the referee, were "severe burns about the face, left shoulder and right leg."

It was also set forth in the agreement that the average weekly wages of claimant at the time of the accident were $57.24. One of the several defects in the findings and award of the referee is that he did not fix the date upon which claimant's disability changed from total to partial. The effect of his findings was that at the date of his last hearing, October 10, 1933, claimant was only 50% disabled. However, as 65% of one half of the wages claimant was earning at the date of the accident exceeds $15 per week (the rate specified in the award for partial disability), the date upon which the total disability decreased to partial is not material. Aside from its merits, it is not clear that the portion of the award relating to the credits for "compensation already paid" is in proper form.

Under the original agreement claimant was paid until March 9, 1928, a period of 6½ weeks; it is stated in the receipt that he returned to work on March 5th, but the amount of his wages is not given. In August, 1928, there was a recurrence of disability and under a supplemental agreement claimant was paid for eleven additional days, or a total of 7⅔ weeks, making an aggregate amount of $115 apparently paid under Section 306 (a).

On February 25, 1929, a second supplemental agreement was executed under Section 306 (c) for disfigurement, under which claimant was paid at the rate of $15 per week for a period of fifty weeks, beginning as of August 26, 1928, making total payments, under paragraphs (a) and (c) of Section 306, in the amount of $865 for 57⅔ weeks during the years 1928-9. The last payment under the agreements was made August 13, 1929, and a final receipt given. Under the award, pay-

ments, at the rate of $15 per week, are directed to be made from the beginning of the compensation period, January 19, 1928, to October 19, 1933, the end of the maximum period of 300 weeks for partial disability, less "the amount of compensation already paid under the agreements," i. e. $4,500, less $865.

This overlooks the fact that during a portion of that 300 weeks' period—from March 5 to August 18, 1928, and prior to the commencement of any payments under Section 306 (c)—claimant was at work. There is evidence (42a) that during this period of five and one half months claimant earned wages equal to those he was receiving when injured. Therefore, he is not entitled to an award of any compensation for those weeks, even if the award is otherwise sustainable: Motte v. Carnegie C. Co. et al., 114 Pa. Superior Ct. 239, 173 A. 670. At the end of six months after his return to work, claimant's earning power was materially reduced as one of the results of his injuries; his partial disability may, therefore, be said to have developed as of that date.

Addressing ourselves, then, to the merits, it is to be noted that the petition for reinstatement of the agreement was not filed until June 14, 1932, which was more than one year after the last payment of compensation but within the 300 weeks' period beginning upon the seventh day following the accident.

The ground upon which review was sought was thus stated: "Have never fully recovered—as soon as exposed to weather or dust ulcers form on right eyeball, necessitating hospital treatment. And in support of the above allegations I state the following facts: Same condition still exists and I desire restoration of eyelid to such extent as to prevent further trouble." Defendants' material averment in their answer reads: "Claimant has been paid for all disability and claimant has been paid for disfigurement for all of which final receipts were executed. Defendant asks that petition be

dismissed for the reason that more than one year has elapsed since the last payment of compensation."

As we view this case, the petition, in fairness to the claimant, who was not represented by counsel at the hearing, should be considered as asking for relief upon the ground of a recurrence of disability and the continuation of that disability beyond the expiration of the agreement based upon disfigurement. In other words, as a petition for reinstatement of the original agreement. Thus regarded, it could not be entertained under the first paragraph of Section 413, because that paragraph applies only to existing agreements, (Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731) and this one had been terminated by a final receipt.

But, unless barred under the amendment of 1927 to the second paragraph of Section 413, the referee and board had authority to consider the petition and grant such relief as the testimony warranted. That paragraph applies, inter alia, to the reinstatement of terminated agreements (Zupicick v. P. & R. C. & I. Co., supra) and "eye injuries" are expressly excepted from the limitation of one year after the date of the last payment of compensation, fixed by the amendment of 1927 as the period within which a petition for review, modification or reinstatement must be filed.

From our examination of the testimony before the referee, we are satisfied that the following finding by the board is supported by competent evidence: "As a result of the burns, the lower lid of the claimant's right eye was partly destroyed, which allows dust and dirt to get into the eye, producing ulcers on the eyeball. This is an injury to the eye. Section 301 defines injury as 'violence to the physical structure of the body, and such disease or infection as naturally results therefrom.' The ulcers on the eyeball are an infection naturally resulting from the injury to the eyelid."

There was also evidence justifying the conclusion of

the compensation authorities that claimant, when he filed his petition, was and for more than three years had been, disabled to the extent of a 50% reduction in his earning power in "all kinds of work for which he is equipped."

In a case of this kind; i. e. partial disability from an "eye injury," a petition under the second paragraph of Section 413 for the reinstatement of an original agreement made under Section 306 (a) (or 306 (b) ) is in time if filed within the 300 weeks following the seventh day after the accident and the court below was right in holding that the limitation of one year did not apply here. We also agree with the conclusion of the board and of the common pleas that, "The specific relief asked by the claimant cannot be granted, as the defendant was responsible for only those doctor and hospital bills which were incurred within the first 30 days after disability began." But, in our opinion, a proper award for partial disability is justifiable under all the circumstances here present.

In one of his conclusions of law, the referee held that both the supplemental agreement for disfigurement and the final receipt given thereunder were founded upon a mistake of fact. The board made no reference to this matter. That question need not be considered as there is sufficient evidence to support the findings of the referee with relation thereto. We have discussed at length the character of evidence necessary to support such a finding in our opinion in Shetina v. Pittsburgh Terminal Coal Corp., 119 Pa. Superior Ct. 425, 179 A. 776. Moreover, we may here repeat what we have formerly said to the effect that when relief is granted under the second paragraph of Section 413, after payments have been discontinued, any final receipts previously given by the claimant automatically disappear from the case.

If it were not for the fact that the judgment improperly includes compensation for the five and one

half months' period, during which claimant earned full wages, we would affirm it as entered. This case has been delayed long enough and we see no reason why the court below, with the assistance of counsel on both sides, cannot so modify the judgment that it will conform with the conclusions herein expressed.

Judgment modified, and as modified affirmed.