## Scipani, Appellant, *v.* Pressed Steel Car Company et al.

Argued April 24, 1942.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY,
JJ.

*S. C. Pugliese,* of *Margiotti, Pugliese & Casey,* for
appellant.

*Murray J. Jordan,* with him *Fred J. Jordan,* for
appellee.

OPINION BY HIRT, J., October 13, 1942:

The complaint in this appeal is directed to that part of the order, affirmed by the court, which, after modifying the agreement to provide compensation for 20% disability, suspended payments until such time as claimant's "partial disability reflects itself in a loss of earn in power," measured by wages received.

Following an injury to claimant's right hand, an open agreement was entered into under which payments of compensation for total disability were made until he returned to his former employment on April 6, 1940, five months after the injury. Upon his refusal, then, to execute a final receipt, defendant petitioned for termination of the agreement. At the hearing there was no dispute as to the facts. In the accident the bones of the thumb and middle finger were fractured and two fingers and the palm of the hand were lacerated. Partial ankylosis of the thumb, index and middle fingers limited flexion which, according to competent medical testimony, resulted in a loss of about one-third of the efficiency of the right hand. In claimant's employment as a 'fitter' he had performed a number of different operations prior to his injury and was paid at a piece rate in varying amount according his output. In the thirteen weeks period immediately before the accident he had worked $44\frac{7}{8}$ days and had earned wages amounting in all to $250.86. By applying the formula of Sec. 309 77 PS 582, to claimant's earnings before the injury, $26.93 was found to be the basic average weekly wage for computing future compensation. The referee and the board refused to terminate, but modified the agreement to provide compensation for partial disability at the rate of $3.59 per week beginning April 6, 1940.

It is agreed that the finding of 20% disability is a determination, from a consideration of all essential factors, of the extent of claimant's loss of earning power as distinguished from the degree of functional impair-

ment of the hand. The character and extent of the injury were considered only in so far as they affected the power to earn. Accordingly. the effect of the order modifying the agreement is a final determination that claimant is entitled to compensation for 20% partial disability except as limited by the amendment of June 21, 1939, P. L. 520, 77 PS 512. The questions are: (1) Is there authority in the amendment for the order suspending payments, and, if so, (2) do the circumstances justify the order of suspension?

(1) Prior to the 1939 amendment, suspension of payments of compensation under an award or an agreement was governed by Sec. 413, 2d par. of the Act, 77 PS 772. And in our decisions construing that section there is no authority for suspension under the circumstances. Our view has been that the temporary cessation of "disability" which supplies the ground for suspending payments under Sec. 413, relates not to the capacity to earn, but "to changes that have occurred in the employe's *physical* condition since the compensation agreement was entered into;" *Johnson v. Jeddo Highland Coal Co.*, 99 Pa. Superior Ct. 94, 97. Under this construction, termination of physical disability is the only ground for suspension of payments. *Stanella v. Scranton Coal Co.*, 122 Pa. Superior Ct. 506, 186 A. 211; *Angelo v. Keystone State Construction Co.*, 134 Pa. Superior Ct. 255, 3 A. (2d) 946; *Stevenson v. Westmoreland Coal Co.*, 146 Pa. Superior Ct. 32, 21 A. (2d) 468. And we have held that the final sentence [1] of the 1939 amendment of Sec. 306(b) did not change this provision of the law. *Johnston v. Butler Railways Co.*, 149 Pa. Superior Ct. 404, 27 A. (2d) 785.

In the light of the circumstances presented by the present appeal, we find it necessary to reconsider the

[1] "The term 'earning power' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident."

414

holding of the Johnson case in its construction of the 1939 amendment. To give it the intended effect we are all agreed that the amendment must be more broadly construed and, by necessary implication, in itself, supplies the ground for suspension of payments during periods when disability is not reflected in loss of wages. The amendment does not abolish the distinction, established by our decisions, between earning power and wages, for the amount received is not made the exclusive measure of the ability to earn; it still may be shown that earning power, as affecting the right to compensation, is *more* than the wages received. The amendment goes no further than to say that no compensation is payable, regardless of loss of earning *power* (as formerly, e. g. *Weinstock v. United Cigar Stores Co.*, 137 Pa. Superior Ct. 128, 8 A. (2d) 799), when an employe receives as much for his services as he earned before his injury. Questions of fact will arise; such questions are for the compensation authorities and the power to suspend payments is essential to give effect to the amendment.

(2) This claimant can work only with his hands; functional impairment is a grave handicap. His injury was serious; due to it, he cannot grasp objects as small as $\frac{1}{2}$ to $\frac{5}{8}$ inches in diameter. He has full grasping ability only with the ring and little fingers of the injured hand—certainly not enough for one who must do manual labor. When he returned to work, however, he was able to perform many of the operations of his former employment; some he could not. He resumed work on a production basis and his earnings, at the applicable unit rate, were equal to, and in some instances somewhat higher than his piece rate before the accident. During the period April 6, to November 15, 1940, the date of the hearing, claimant earned a total of $533.38, or an average weekly wage of about $16.66. Although the record shows earnings only in semi-

monthly payments, it is clear that in some weeks he earned more than $26.93, but for the most part his weekly earnings were less. Defendant's plant was in operation only intermittently but claimant worked whenever work was available. The opinion of the board recites: "The claimant's loss of earnings [wages received] was caused by reductions in defendant's working force, weather, other accidents and matters not related to the claimant's physical impairment." Upon this finding, coupled with the fact that claimant's *rate* of pay was not less than before his injury, the board affirmed the conclusion of the referee that claimant suffered no loss and suspended payments on that ground. We think there is error in this conclusion. The 1939 amendment refers to the actual amount of wages received regardless of the rate of pay and the lack of opportunity for employment.

We do not agree that the phrase "the weekly amount which the employe receives" contemplates a determination each week of the right to compensation for that period. Section 306(b) refers to Sec. 309; both sections are a part of Article III and the latter section provides: "Wherever in this article the term 'wages' is used, it shall be construed to mean average weekly wages" ascertained, when fixed according to output and paid semi-monthly by computing the average weekly wage during a period of three consecutive months. "The weekly amount" of wages referred to in the 1939 amendment of Sec. 306(b) means the *average* weekly wages for a like period. For any three-months-period, beginning with the date of claimant's return to work, when compensation is not payable because of the 1939 amendment, an order of suspension of payments will be appropriate.

The judgment is reversed and the record is remitted for the purpose of further hearing, and for an order not inconsistent with his opinion.