## Hite, Appellant, v. Rockhill Coal Company.

Submitted October 27, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

George Jerko and C. Jewett Henry, for appellant.

Frank G. Smith, of Smith & Maine, and Henderson & Henderson, for appellee.

OPINION BY HIRT, J., January 28, 1943:

The question in this appeal is whether claimant is entitled to compensation for partial disability for the period beginning March 1, 1939 and ending January 13, 1941 when, according to the medical testimony, there was a complete recovery from the injury. The board made an award of compensation based upon 25% partial disability; the lower court reversed and entered judgment for defendant on the ground that the evidence was insufficient to set aside a final receipt.

Claimant, on October 3, 1938, suffered a compound fracture of the left leg in defendant's mine. The accident was compensable and under an open agreement, compensation for total disability was paid in full to March 1, 1939, when claimant returned to work and executed a final receipt. The medical testimony is that as late as May 2, 1940 there was a backward bend in the leg and some weakness in the abductor muscles of the thigh resulting in disability of about 25%. Upon this testimony the receipt was properly set aside under §434 of the Compensation Act as amended June 4, 1937, P. L. 1552, §1, 77 PS 1001. That amendment was then in force and is controlling. The opinion of the lower court overlooks the fact that under the amendment, evidence that a claimant "had an existing

disability at the time the final receipt was taken," in itself, requires that the receipt be set aside. The judgment, therefore, will be reversed. There remains the question whether the record supports the award. We are of the opinion that it does.

The order setting aside the final receipt on the ground that claimant still suffered some disability, revived the compensation agreement in effect when the receipt was given. The issue, then, was the degree of claimant's partial disability during the period as reflected in earning power. The burden of reducing the amount of compensation payable under the revived agreement, was on the defendant as though it had petitioned for a modification of the agreement. *Artac v. Union Collieries Co.,* 149 Pa. Superior Ct. 449, 27 A. 2d 782.

The medical testimony established disability of about 25%, not in the sense of functional impairment, but as disability reflected in loss of earning power and the board accepted that testimony as the measure of loss. The defendant has not met the burden of showing it was less. Claimant on March 1, 1939, returned to work on the advice of his physician but, because of his disability, was assigned to somewhat lighter work repairing and cleaning roads in defendant's mine, for which he received less than his former earnings. After twenty days he resumed digging coal and did the work of a miner until May 23, 1940 when he voluntarily quit his employment with defendant. During this period his wages were equal to or exceeded what he earned before his injury. Claimant is not affected by the 1939 amendment, 77 PS 1001, (*Scipani v. Pressed Steel Car Co.,* 150 Pa. Superior Ct. 410, 28 A. 2d 502) and the wages he received after returning to work do not necessarily bar his claim for compensation. Under the then applicable law, wages equal to or in excess of earnings before the injury are evidence that there was no loss

of earning power from the accident but they are not conclusive of the question. Other factors are involved, among them; the character and extent of the physical disability; claimant's efficiency in the same employment compared with his former productivity, and his ability to earn wages in any kind of employment for which he was fitted. *Bispels v. C. R. Shoemaker, Inc.,* 133 Pa. Superior Ct. 117, 2 A. 2d 35; *Weinstock v. United Cigar Stores Co.,* 137 Pa. Superior Ct. 128, 8 A. 2d 799.

The board found the evidence of increased wages insufficient proof of no impairment of earning power, in the light of other facts. When claimant resumed his former work according to his testimony he was assigned to a part of the mine where it was easier to get out the coal and he worked with a buddy, "a good strong fellow," who "took pity" on him and who did more than his share of the work. He quit because of pain in his foot (due according to the medical testimony to stress from the back-bowing of the leg) and weakness and swelling in his leg. He could no longer stand on it and do seven hours' work. After remaining idle for four weeks he worked for a contractor on a highway, greasing trucks, until July 9, 1940. He then went back to defendant's mine but quit eleven days later because he couldn't stand the work. He then found employment with Monroe Electric Light Company doing "a little bit of all kinds of work for them" and with the Pittsburgh Steel Company erecting a fence along the highway. He worked for the latter company for three and one-half months at 55 cents an hour; since then he has been operating a small gasoline service station. The venture is unprofitable.

The injury was serious—a compound fracture in the mid portion of the fibula and of the tibia at "its junction of the lower and middle thirds." Claimant made a good recovery in the opinion of defendant's medical

witness, but only "considering the severity of the injury." The fact that he returned to mining coal under more favorable working conditions, without loss of earnings is not decisive of the question. His testimony that he quit because of the handicap of an injured leg has the ring of truth because of his second unsuccessful attempt to do the work of a miner, and his willingness to accept smaller earnings in other employment thereafter. Before his injury claimant had worked steadily for defendant as a miner over a period of years. He was not a 'floater' and changes in occupation came after the injury but not before. It is not an unreasonable inference that he sought lighter work because of his disability from injury. In any view this was a question for the board as the ultimate fact finding tribunal and their finding is conclusive although the record may contain other competent evidence which would have supported a contrary finding. *Kasman v. Hillman C. & C. Co.*, 149 Pa. Superior Ct. 263, 27 A. 2d 762.

Judgment reversed; the order of the board modifying the agreement to an award of compensation for 25% partial disability is affirmed and judgment is directed to be entered thereon.