Holtz, Appellant *v.* McGraw & Bindley et al.

Argued April 25, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*David L. Ullman,* for appellant.

*Francis A. Dunn,* for appellees.

OPINION BY ARNOLD, J., September 30, 1947:

This is an appeal by the claimant in a workmen's compensation case concerning the form of an order of the board suspending payments of compensation, which was affirmed by the court below. It is contended only that the order is too broad, and it is admitted that the defendant was entitled to have a suspension of payments.

Claimant and defendant entered into an open agreement for total disability, and compensation was paid thereunder for some months. Defendant then petitioned to terminate, and amended to ask that the compensation be suspended.

The claimant was employed as a mechanic in connection with coal stripping machinery. His right hand was broken and crippled, and at the time of the hearing on the petition he was unable to work as a mechanic, but had been given employment as a foreman (lighter work) at equivalent wages. The defendant did not contend that the claimant had no partial disability, and in fact there existed a partial, permanent disability. The defendant asked that the compensation payments be suspended *only* because of the fact that admittedly claimant's wages in the new employment were equal to his wages before the injury.

The board went farther than merely suspending the compensation payments and entered the following order: "All payments of compensation under the agreement . . . are hereby suspended as of [the date claimant returned to his new work] said suspension to continue until . . . the claimant may suffer loss in earnings by reason of disability he may suffer in the future as the result of his accident."

Claimant-appellant contends that under the statute the burden of proof is on the employer to show a decrease

in disability to less than that fixed in the agreement; and that the instant order shifts the burden of proof to him and away from the employer if and when his earnings at the lighter work shall fail, although his earnings at the lighter work constituted the sole reason for the suspension. Appellant argues that, because of the consequent expense which will fall to him in connection with employing medical experts, to have adjudicated again what had previously been adjudicated or agreed to, this burden of proof should not be shifted; and that it cannot be shifted by the simple device of giving him light work at equivalent wages, when in fact he is permanently, partially disabled.

The questions raised require some review of the statutes and decisional law in regard to orders suspending compensation payments. In the original Act of 1915 the word "suspension" was not used. Under §426 thereof (now §413) an agreement or award could be *modified or terminated* by the board on the ground that the incapacity or disability had changed. No legislative sanction was given therein for a suspension of compensation payments. There grew up an administrative practice of the board to suspend compensation payments where the claimant had returned to light work at equivalent wages. An old order of the board read:[1] "27. A Referee before whom it is established that any claimant does, in fact, suffer a partial disability reflected in loss of earning power shall proceed forthwith to determine, from the best evidence then available, the extent of the loss of earning power and shall enter an appropriate award. *Where there is a physical impairment due to the accident* not presently reflected in any loss of earning power, compensation shall not be terminated but shall be suspended." (Emphasis supplied.) Parenthetically, as will later appear this rule was, in substance, enacted in the amendment of 1939 in connection with §306. After some

---

[1] As quoted in Skinner's Pennsylvania Workmen's Compensation Law, (4th ed.) Vol. I, page 414.

three years' experience the amendments of 1919 were had and there was added to §413 a new device for subsequently changing an award or agreement because of the altered condition of claimant, and the legislature directly authorized the board to "modify, reinstate, *suspend* or terminate." As far as "suspensions" are concerned this part of §413 has been undisturbed by any amendments since 1919, although the amendment and reënactment of 1939 preserved the exact words.

Thus, following administrative action of the board, the legislature gave specific recognition to "suspension", and that word was carried *in addition* to the old word, "terminate"; and "suspension" was therefore a different device than termination. The instant order of the board which it calls a "suspension" differs not at all from a termination order. In all respects it has exactly the same effect; for the claimant, if deprived of his light work, must allege and prove afresh, according to the terms of the instant order, that his then disability was occasioned by the accident, and that from it he suffers economic loss. A termination order could go no farther. The addition of the word "suspension" to §413, by the amendment of 1919, and all the subsequent reenactments, was undoubtedly meant by the legislature as something distinct from termination: That payments of compensation could be *suspended* where earnings of the claimant at light work (as distinct from his earning power) prevented his economic loss.

The decisional law has exactly followed this theory and pattern. Prior to 1939 the fact, standing alone, that an injured employe returned to light work at equivalent wages was not conclusive that disability had ceased: *Artac v. Union Collieries Company,* 149 Pa. Superior Ct. 449, 454, 27 A. 2d 782; and we have sustained awards of compensation to claimants receiving equivalent wages but suffering partial disability: *Weinstock v. United Cigar Stores Company et al.,* 137 Pa. Superior Ct. 128, 8 A. 2d 799; *Chubb v. Allegheny Country Club et al.,* 147 Pa. Superior Ct. 146, 24 A. 2d 550; *Johnston v. Butler*

*Railways Company et al.,* 149 Pa. Superior Ct. 404, 27 A. 2d 785, where the wages received were not wholly *earned.* Only where the claimant *both* earns and receives equivalent wages is he not entitled to compensation for partial disability: *Irwin v. Byllesby Engineering & Management Corporation,* 119 Pa. Superior Ct. 449, 179 A. 780. See helpful review of Judge HIRT in *Kelemon v. Reiber,* 161 Pa. Superior Ct. 169, 53 A. 2d 903. In this type of case the question was whether a partial disability existed, which was answered by finding that it can exist even though the claimant suffers no economic loss. Thus, if claimant had a fifty per cent, partial disability, he might have a loss of *earning power* which was not reflected in his earnings as long as he was given light work, but which would be reflected in his earnings the moment such light work was withdrawn. In such latter event the partial disability which he suffered would then affect both his earnings and his earning power. He would not be able to return to the heavier work which he had done, even though an available job was open to him. This would be particularly true where, as in the instant case, the claimant was a mechanic with a crippled hand who had always performed work depending upon his manual dexterity.

The law, decisional and statutory, thus remained until the reënactment and amendment of 1939. Section 306 (77 PS 512) in part now reads (the amendment being inserted in italics): "For disability partial in character . . . sixty-six and two thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine [77 PS 582], and the earning power of the employe thereafter . . . *The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident."* The legislature adopted in substance the theory which the board had promulgated in old rule 27.

By the amendment and enactment of 1939, §413 of the statute (77 PS 772) was reënacted without change insofar as modification, suspension or termination is concerned, and the plan of suspending compensation payments was carefully preserved. If the reception of equivalent wages under the amendment of §306 was to *terminate,* the word "suspension" would not have been retained in §413. Clearly the legislature in 1939, by the addition of the italicized portion of §306, merely intended to prevent the receipt by the claimant of *both* equivalent wages and compensation payments. This we had held permissible in the *Weinstock, Chubb* and *Johnston* cases, supra. The legislature declared to the contrary.

The 1939 amendment to §413 being, in effect, so that the receipt of equivalent wages resulted in what everybody understood to be a *suspension* of compensation payments, that amendment came before this court in *Scipani v. Pressed Steel Car Company et al.,* 150 Pa. Superior Ct. 410, 28 A. 2d 502. Speaking through Judge HIRT, we said (414) : "To give it [the amendment] the intended effect we are all agreed that the amendment must be more broadly construed and, by necessary implication, *in itself,* supplies the ground for *suspension of payments* during periods when disability is not reflected in loss of wages." (Emphasis supplied.) The whole decisional law is that the maximum effect of equivalent earnings is suspension of the compensation payments, and not a termination. The *Scipani* decision was rendered October 13, 1942.

The Act was again amended by the Act of May 18, 1945, P. L. 671. Section 413 was not amended, but in the amendment to §428 it was provided (in the same words as in the Act of 1939) that there may be filed as a judgment any agreement or award which has been "modified, *suspended,* reinstated, or terminated by a supplemental agreement . . . or by an award or order made

under the provisions of section four hundred and thirteen." (Emphasis supplied.) At this date it was almost three years since the *Scipani* decision. Workmen's compensation was thus the subject of legislation in the session of 1945. Therefore the legislature did not intend to change the construction which this court had placed on the amendment of §306 of the 1939 Act, i. e., the portion as to equivalent earnings: Statutory Construction Act, §52 (4), 46 PS 552. See *Breisch v. Central R. of New Jersey*, 312 U.S. 484, 132 A.L.R. 918, where the legislature in amending the Workmen's Compensation Act took no action to overturn a prior judicial construction. If the legislature in 1945 disagreed with the doctrine of the *Scipani* case that suspension resulted from the receipt of equivalent wages, it would undoubtedly have provided that the result should be a termination just as the legislature acted when it differed with the doctrine promulgated in the *Weinstock, Chubb* and *Johnston* cases, supra. So, too, if the legislature in 1939 intended equivalent wages to work a termination, the word "suspension" would not have been retained in §413.

The amendment of 1939 as to equivalent wages under §306 in partial disability cases was not intended to be a final adjudication of whether *disability* had ceased. It was intended to relieve the employer from the payment of compensation to a claimant then partially disabled, but who then suffered no economic loss by reason of his injury.

The law has always been that where a claimant has an agreement or award, if the claimant alleges an increase in disability over that set forth, the burden of proof is on him to show such increase; and that likewise if the employer alleges a decrease in the disability, the burden is on him. Only by holding that the receipt of equivalent wages by the claimant entitles the employer to a *termination* can the present order be sustained. The legislature could scarcely have meant that

the receipt of equivalent wages for light work by a claimant forty per cent. partially permanently disabled, with a forty per cent. loss of earning power, effected a termination of his award or agreement; for that would mean that after the light work ceased, the claimant could not receive compensation except upon a showing, as provided in §413, that his disability had increased *since* the termination. The termination order itself would be res adjudicata that he suffered no disability at the time of the order. Undoubtedly the legislature meant that the payments of compensation were to be *suspended* exactly as we held in the *Scipani* case.

In the instant case the compensation authorities were bound to suspend the payment of compensation; but for how long? Until the claimant's earnings were less than before the accident. This for the reason that the thing which suspended the payments was *not* the cessation of disability, nor the *restoration* of earning power, but the mere fact of the receipt of equivalent wages. When that falls the suspension falls. At the time the suspension order was entered, an agreement existed for the payment of compensation, and it was not terminated. It was suspended, and properly so, but when the suspension is lifted, the old agreement remains and continues. When the claimant's earnings are less than those received before the accident, there can be no suspension (in full). If the suspension cannot exist, the compensation in the original agreement or award governs, subject to modification only upon a showing of a change in disability or earning power. The burden of proof remains where it always was: On him who alleges the fact. Equivalent wages simply remove the claimant from the compensation rolls of the defendant during the period that the claimant receives such equivalent wages, and neither fixes the amount of the claimant's disability or loss of earning power, nor affects the burden of proof.

The appellant has argued here that the board should have fixed the percentage of partial disability which the claimant suffered. But this is a matter which does not concern the claimant. It does concern the employer or its carrier. We think that fairness to the employer requires that the percentage of partial disability existing at the time of the suspension should be determined by the board, at the employer's request, so that if the claimant thereafter loses his light work with equivalent wages, the claimant would have the burden of showing that his then partial disability is greater than that fixed at the hearing. Otherwise, the whole burden of showing the amount of partial disability, if any, rests upon the employer. The bare fact that the employe was able to resume light work determines that the disability is no longer total, but does not establish that it has ceased.

For these reasons we believe that the order of the board was too broad. It was right in suspending the compensation payments, but it should not have gone farther than the words of the 1939 amendment, which is silent on the matters we have discussed. Furthermore, the only thing before the board was whether there should be a suspension, and the board attempted to fix rights in futuro.

We think that the board's order should have read: "All payments under the agreement executed . . . are hereby suspended as of [the day claimant returned to his new light work] ; said suspension to continue as long as the employe continues to receive wages in a weekly amount which are equivalent to the wages received as of the time of the injury [that amount to be stated by the board]."

The order is reversed and it is directed that the court below remit the record to the Workmen's Compensation Board with instructions to determine the amount of claimant's partial disability, if any, and thereupon to make such orders, including an order of suspension, as may be consistent with this opinion.