Giannetti *v.* M. C. Seib Company et al., Appellants.

Argued October 7, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Raymond J. Porreca,* with him *Raymond A. White, Jr.,* for appellants.

*Alexander F. Barbieri,* for appellee.

OPINION BY ARNOLD, J., January 14, 1949:

In this workmen's compensation case defendant and its insurance carrier entered into an open agreement with the claimant to pay him $15.60 per week compensation for total disability for 500 weeks from June 1, 1939, "until . . . claimant's death, unless this agreement is previously terminated by final receipt or supplemental agreement . . . or by order of the Workmen's Compensation Board." Under this agreement claimant was entitled to receive from the defendant and its insurance carrier more than $7,500 unless the same was modified or terminated by a new agreement or order of the board. Likewise if the agreement was not by these means changed, the claimant had a right to enter judgment thereon, which judgment could be entered *after* the 500 week period; for there is no statute of limitations on the entry of judgment on an award or agreement under § 428 of the Act, as amended (77 PS § 921).

Under the agreement the defendant paid to February 1, 1940, and then petitioned *to terminate* on the ground that disability had ceased, which the claimant denied. The referee found that the claimant's disability had not ceased but had changed on February 5, 1940, to a partial disability of 25%, and ordered that workmen's compensation for partial disability be paid at the rate of $3.90 per week (25% partial), beginning February 5, 1940; and that these compensation payments "be suspended as of May 31, 1941 until such time as claimant can prove a *loss in earning*. . . ." (Italics supplied.)

Thus the agreement for total disability was superseded by an award of 25% partial disability beginning February 5, 1940. Under this the claimant was entitled to receive $3.90 per week for 400 weeks from the original injury on May 25, 1939, since the award was never thereafter modified or terminated. The claimant could receive $3.90 per week by either of two methods,—the

payment of compensation by the defendant, or the receipt by the claimant of equivalent wages during the period.

After the expiration of the 400 week period the defendant petitioned *to terminate*. But there was nothing to terminate, for the award was for 400 weeks and by its own terms had expired. The only question was whether the award had been satisfied. It could have been discharged in either of the two ways noted above, but in no other way. To the misnamed petition to terminate the claimant filed an answer that his 25% partial disability continued to exist, and that he had received no equivalent wages since March 9, 1943. At the hearing it was admitted that the defendant had not discharged the award by payment. Upon testimony that was fully substantial, the referee found that the 25% partial disability existed throughout the 400 weeks. The only remaining question was whether the award was discharged because the claimant had received equivalent wages. Upon fully substantial evidence the referee found that the claimant had received no equivalent wages after March 9, 1943, and that *both his disability and his earning power* thereafter were 25% reduced.

On this state of the record, and because the claimant had not taken action before the expiration of 400 weeks, the appellants insist that they must be given credit on the award for that which admittedly the claimant did not receive, and that which admittedly they never paid. The mere statement of the proposition demonstrates its injustice.

The referee and the board correctly determined that the question was one of satisfaction and not termination, and that the award was not satisfied. They therefore acted properly in adjudicating the balance due and unpaid.

In *Holtz v. McGraw & Bindley*, 161 Pa. Superior Ct. 371; 54 A. 2d 905, this Court discussed some of the underlying principles in connection with these suspension

orders. Prior to 1939 the fact that the injured employe returned to light work at equivalent wages was not conclusive that disability had ceased: *Artac v. Union Collieries Company*, 149 Pa. Superior Ct. 449, 454, 27 A. 2d 782 (allocatur refused). In *Weinstock v. United Cigar Stores Company et al.*, 137 Pa. Superior Ct. 128, 8 A. 2d 799 (allocatur refused) this Court sustained awards to claimants receiving equivalent wages but still suffering a partial disability. See also *Chubb v. Allegheny Country Club et al.*, 147 Pa. Superior Ct. 146, 24 A. 2d 550; *Johnston v. Butler Railways Company et al.*, 149 Pa. Superior Ct. 404, 27 A. 2d 785. By the amendment of 1939, § 306 (77 PS § 512) of the Workmen's Compensation Act now reads: "For disability partial in character . . . sixty-six and two thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine [77 PS § 582], and the earning power of the employe thereafter. . . . *The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident.*" (Italics supplied.) The distinction between earning power (or disability) and earnings must be kept in mind. In the instant case the "earning power" of this claimant was 25% reduced. But "earning power," under the 1939 amendment, is not to be taken as less than the wages the employe receives after the accident. The present claimant received no equivalent wages after March 9, 1943, and continued to suffer a 25% reduction of his "earning power." In *Holtz v. McGraw & Bindley*, supra, we also said (p. 378): "Equivalent wages simply remove the claimant from the compensation rolls of the defendant during the period that the claimant receives such equivalent wages, and neither fixes the amount of the claimant's disability or loss of earning power. . . ."

In the present case the claimant is *not* precluded by any statute, standing rule or order.

Judgment affirmed.