## Gibbs v. Fayette R. Plumb, Inc.

*MacCoy, Evans & Lewis*, for claimant.
*David L. Ullman*, for defendant.

REIMEL, J., April 17, 1958.—This is an appeal from a decision of the workmen's compensation board which set aside the final receipt and reinstated a modified compensation agreement in favor of claimant.

Claimant suffered an accidental injury on May 7, 1953, in the course of his employment as a wedger in defendant's factory. A flying chisel struck claimant resulting in a traumatic left inguinal hernia for which claimant submitted to an operation on May 27, 1953. An agreement was entered into providing for compensation for total disability commencing June 1, 1953, at the rate of $30 per week, based on an average weekly wage of $68.10. Compensation was paid to July 21, 1953, at which time claimant executed a final receipt and returned to work. Defendant corporation's doctor and nurse both recommended light work. After several weeks at wedging and test work, claimant was transferred from wedging to a burn-off wheel which necessitated pressing his foot down on a lever. Work on this operation caused claimant's left groin and testicle to swell up and to become painful and tender. When claimant stopped work because of this condition, he was laid off because defendant had no suitable work for him.

On September 9, 1953, claimant obtained employment with Miller Transportation Company as a driver of a tractor-trailer combination doing pick-up and delivery work locally. Claimant was fired from this position because he could not lift the cargo involved. He was rehired by the same company driving the same type vehicle on intercity trips.

It was stipulated that claimant returned to work for defendant on July 22, 1953, and worked until August 26, 1953, receiving the same hourly rate of pay, although during the week ending July 25th, he worked three days receiving $38.80; the week ending August 8th, no work was performed; the week ending August

15th, he worked one day receiving $10.12; the week ending August 22nd, he worked five days, receiving $56.99; the week ending August 29th, he worked two days, receiving $25.44. He was then discharged by his employer. Claimant worked for Miller Transportation Company from September 9, 1953, to December 31, 1953, receiving an average of $43.78 per week. He received quarterly from the same employer during 1954, $826.48, $946.99, $895.33 and $1,240.51.

Claimant alleged that in order to hold his position with the Miller Transportation Company, he was required to work at irregular hours when public transportation facilities were not available and further was required because of his physical condition, to engage a helper to assist him in unloading operations. He further alleged that this required him to pay out of his own pocket in order to hold this position, an average of $5 per week for taxi fares and an average of $15 per week for helpers.

. The primary ground for defendant's appeal, although stated in several exceptions. was the board's allowance of the sum of $20 per week, consisting of $15 for a helper and $5 for taxi fares, as a deduction from the sums received by claimant from his employer in ascertaining the "weekly amount" received by the employe after the accident. Defendants contend that the mere receipt by claimant after the accident of amounts equal to or greater than the prior earnings of the claimant. constitutes a bar to the allowance of compensation under section 306(b) of the act. They further contend, in the alternative, that assuming the mere receipt of equal amounts after the accident is not a bar to compensation, that the specific items allowed as deductions were improperly considered and were not so allowable.

The pertinent and controlling legislation is The Workmen's Compensation Act of June 2, 1915, P. L.

736, art. III; sec. 306(b), as amended, 77 PS §512, which, in part, provides: "For disability partial in character . . . sixty-six and two thirds per centum of the difference between the wages of the injured employe, . . . and the earning power of the employe thereafter; . . . The term 'earning power', as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident, . . . and in no instance shall an employee receiving compensation under this section receive more in compensation and wages combined than a fellow employe in similar employment".

Elements affecting earning power in addition to actual wages received after injuries are: (1) The character and extent of the physical injury or disability; (2) his productivity or efficiency in the same employment as compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted: Garvin v. Philadelphia Transportation Co., 173 Pa. Superior Ct. 15; Leaver v. The Midvale Co., 162 Pa. Superior Ct. 393. A review of the evidence reveals that the board's finding of a recurrence of disability with a resultant loss of earning power of 40 percent, is supported by substantial and competent evidence and must be sustained.

Prior to the 1939 amendment to the compensation act, the courts had sustained awards of compensation to claimants receiving equivalent wages after the accident but suffering partial disability where the wages received were not wholly earned. Only where claimant both earns and receives equivalent wages is he not entitled to compensation for partial disability: Johnston v. Butler Railways Co., 149 Pa. Superior Ct. 404; Chubb v. Allegheny Country Club, 147 Pa. Superior Ct. 146; Weinstock v. United Cigar Stores Co., 137 Pa. Superior Ct. 128.

Clearly the legislature in 1939 by amendment merely intended to prevent the receipt by claimant of both equivalent wages and compensation payments: Holtz v. McGraw & Bindley, 161 Pa. Superior Ct. 371. The distinction between wages and earning power was retained. However, where there is disability and loss of earning power, but the employe receives as much in wages for his services as he did before the injury, an award may be made but payment of compensation must be suspended: Ede v. Ruhe Motor Corp., 184 Pa. Superior Ct. 603; Scipani v. Pressed Steel Car Co., 150 Pa. Superior Ct. 410.

On the question of equivalent wages, we find that section 306(b) of the statute, as amended, refers to the actual amount of wages received regardless of the rate of pay and the lack of opportunity for employment: Liberatori v. Scott Smith Cadillac Co., 172 Pa. Superior Ct. 121. Moreover, the phrase "the weekly amount which the employee receives" does not contemplate a determination each week of the rate of compensation for that period. It refers to the average weekly wages for a period of three consecutive months: Scipani v. Pressed Steel Car Co., supra. However, the amendment of 1939 as to equivalent wages under section 306 in partial disability cases was not intended to be a final adjudication of whether disability had ceased. It was intended to relieve the employer from the payment of compensation to a claimant then partially disabled, but who then suffered no economic loss by reason of his injury: Holtz v. McGraw & Bindley, supra.

The board found, upon substantial and competent evidence, that the expenses claimed were necessary for the retention of claimant's employment. A consideration of the remedial nature of The Workmen's Compensation Act and the liberal construction which must be applied to accomplish its broad humanitarian

purpose, of the intent of the legislature in the prevention of economic loss by reason of injury and of the fact that claimant complied with his duty to make an honest effort to rehabilitate himself within his actual limitations, requires the conclusion that the sums were properly deducted in ascertaining claimant's "weekly amount" received after the accident.

The board's computation of the five cent tips to taxi drivers in arriving at the $5 figure for taxi fares is de minimus.

Defendants' other exceptions are without merit and must also be dismissed.

### Order

And now, to wit, April 17, 1958, defendants' appeal is dismissed and the order entered by the workmen's compensation board on November 4, 1955, is affirmed.