McGahen, Appellant, *v.* General Electric
Company.

Argued April 11, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*John M. Wolford,* with him *Anthony L. Gambatese,* for appellant.

*A. Grant Walker,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY FLOOD, J., June 15, 1961:

This case has been three times before the Workmen's Compensation Board and three times before the

common pleas court. As a result of this otherwise regrettable circumstance, the facts, which at the beginning were in considerable dispute, have become reasonably clear and the issues have been reduced to one—the validity of a final receipt signed by the claimant in triplicate on March 28, 1952. The referee and the board held that this final receipt was not valid under the act and that since no petition to terminate had ever been filed, the agreement for compensation executed between the parties on February 29, 1952 was still in effect and the appellant was entitled to compensation for the entire period during which she had been out of work since September 9, 1952, her last day on the job. The court in its final opinion held that the receipt was valid and that the plaintiff had not sustained her burden of proving recurrence of her disability, and entered judgment for the defendant.

Since the board and the court have never seen eye to eye on the inferences to be drawn from the facts or on the law, we feel it necessary to set forth the chronology of events at greater length than would ordinarily be required when there is so little dispute as to what actually occurred.

1. The appellant, on December 17, 1951 met with an accident in the course of her employment which resulted in sub deltoid bursitis of the shoulder, contusion of the right shoulder and contusion of both knees. She apparently was able to work from the date of the accident until February 9, 1952. On that date she became so disabled she had to leave her work and the parties entered into a compensation agreement. This agreement recited the accident of December 17, 1951 and the resultant disability on February 9, 1952 and provided for open-end compensation at the rate of $25.00 per week.

She returned to work on March 28, 1952 at which time she signed a final receipt in triplicate and re-

ceived a check for a final payment of compensation. She left the two executed copies of the final receipt with the defendant but took home the original executed final receipt and the check. She endorsed the check, but apparently put both the check and the receipt in a drawer and forgot all about them. At any rate, she never cashed the check or returned the executed original final receipt to the defendant.

She continued to work from the execution of the receipt on March 28, 1952, until September 9, 1952, when she left the job and was hospitalized five days later. She then applied for health and accident insurance benefits. On her application, apparently executed while she was in the hospital, the cause of the hospitalization, evidently obtained from the hospital records, was stated to be "right subacromial bursitis, chronic, scalenus anticus syndrome secondary to number one involutional melancholia-paranoid type with depressed features". Subacromial bursitis apparently is practically indistinguishable medically from sub deltoid bursitis. It therefore appears that this record, introduced by the defendant, indicates that the plaintiff may still have been suffering from the effects of the injury to her shoulder when she left the job in September, 1952. However, the evidence is not such as to enable us to determine conclusively that she was disabled as a result of this injury after September 1952 and if, as the court held, she has the burden of conclusively proving continuance or recurrence of the original injury, she has not met it. In her application for insurance benefits there was no answer made to the question as to whether or not her disability resulted from an accident.

The insurance that she received as a result of this hospitalization ran for a period of twenty-six weeks. After this period she began to inquire of the Bureau of Workmen's Compensation whether she was not en-

titled to further workmen's compensation because of the accident. On July 31, 1953, Referee Smith inquired of the defendant about the status of appellant's claim for workmen's compensation. The defendant replied on August 4, 1953, that in the company's opinion, the illness which affected the claimant was not related to her injury and that while she might have had some residual bursitis during the past months the primary cause of her prolonged absence was her psychosis. Smith on the same day wrote to the appellant that based on information furnished him by her employer her claim was barred because it had not been filed within one year.

Under the same date, August 4, 1953, the director of the bureau wrote to the defendant to inquire about the absence of an interim or final receipt in the bureau's records of the case. On August 7, 1953, the defendant sent the bureau a photostat of an executed copy of the receipt in its possession, apparently informing the board that the original had not been returned and the check had not been cashed. The bureau did nothing by way of approval or disapproval of the final receipt.

These are the facts upon which the case turns. The proceedings thereafter before two referees and an ensuing dialogue between the board and the court, resulting in three opinions by each, must be briefly summarized.

On January 12, 1954, the claimant filed the petition to review now before us, claiming that the defendant's doctor falsified a report that she was absent because of illness and stating that she had refused to sign a final receipt. No proof of either of these allegations was produced.

The claimant's petition was certified to Referee Smith who held two hearings in which the question of the execution of the final receipt was raised.

On April 28, 1954, Referee Smith addressed a letter to the Secretary of the Workmen's Compensation Board in which he discussed the situation and then asked, "In this case is the photostatic copy of the carbon copy of the signed final receipt in the files of the defendant, which apparently has been accepted by the bureau, a bona fide and valid final settlement receipt?" The letter was evidently referred to the director of the bureau who replied on April 30, 1954, that when an original or copy of a final receipt is received by the bureau it is assumed to be a valid receipt and that he did not feel that the matter should be determined by the bureau since it was judicial in character.

Nothing further was done until Referee Smith had been succeeded by Referee Cartwright, who held a hearing on August 15, 1955. At this time the claimant testified that the injury still bothered her, that it was then "dreadfully painful right here in the shoulder where I hit". In answer to questions whether she was able to go back to work, she said "I work around the house but to keep at it, I can't". She did not deny that she had signed "maybe three or four" final receipt papers but she apparently remembered little about it. She also testified at this hearing that Dr. Chaffee was her attending physician from the date of the accident until February, 1954.

Referee Cartwright on September 7, 1955 made an award of compensation for total disability from September 9, 1952. He made findings covering some of the facts above recited and further found that following the injury, the claimant continued to work until September 9, 1952 when she was compelled to quit because of pain in her arm due to the injury and since that date she has not been able to work due to the injury suffered in the course of her employment with defendant, that she executed the final receipt, left copies with the defendant, but never cashed the check or sent in the

final receipt, claiming her disability was still in effect and that the defendant had never filed any petition to terminate the compensation agreement.

On appeal to the board the award of the referee was affirmed in an opinion dated April 26, 1956. The board held that since no valid final receipt was in evidence and no petition to terminate had ever been filed by the defendant there was no proof that the claimant's disability had ceased and that therefore her failure to file a petition for review within a year from March 28, 1952 did not bar her "since the original compensation agreement was still in being," although it was held in abeyance pending receipt of wages during her employment up to September 9, 1952 and during her receipt of group insurance for twenty-six weeks thereafter. The board treated her petition as one to enforce payment under the open original agreement to which the one year Statute of Limitation, §413, does not apply, *Holtz v. McGraw and Bindley,* 161 Pa. Superior Ct. 371, 54 A. 2d 905 (1947). It further held that under these circumstances the claimant had no burden to establish recurrence of disability because existence of disability was agreed to in the open agreement which was never terminated since no valid final receipt was outstanding and no petition for termination had been filed by the defendant.

The board further found that the record clearly shows that the claimant was inadvisedly told to return to work by a defendant official and given a final receipt to execute while still being treated for the injury by the defendant company's physician who continued to treat her all during her remaining employment with the defendant and thereafter during the time she was receiving group insurance and until February 1954, six months after the copy of the final receipt was filed with the bureau. From this decision an appeal was taken to the court of common pleas.

The court quoting a portion of the defendant's petition, indicating that the board did not have before it all the testimony taken before the two referees, certified the record back to the board to enable it to complete the record, to make a specific finding as to whether it rendered the opinion of April 26, 1956, with the complete record before it and, if not, to render an opinion based upon the complete record and then certify the entire record back to the court.

Thereafter the board brought the complete record together including the pertinent correspondence and the notes of testimony taken at the hearings before former Referee Smith. The board then filed an opinion dated February 26, 1958, in which it concluded from all the evidence gathered from the entire record that the referee's findings and conclusions and the award should be affirmed for the reasons set forth in the board's opinion of April 26, 1956, stating that the testimony at the hearings before Referee Smith substantiated the board's position.

The matter then came again before the court which, in a painstaking opinion by Judge LAUB, decided that the matter must be remanded to the board for more specific findings of fact for several reasons. The court apparently felt that the matter of the validity of the final receipt had not been properly considered by the board. While it found both the claimant and the defendant at fault in the matter, the court indicated that the chief dereliction was that of the bureau in failing to approve or disapprove the copy of the final receipt. The court indicated that since Section 407 of the Workmen's Compensation Act makes a final receipt valid and binding unless modified or set aside, the fact that the claimant had executed a final receipt in triplicate and received a check covering her final payment was prima facie evidence of a termination of her disability; and that until this receipt was invalidated in some

way, the plaintiff had no right of recovery upon the original agreement. The court further disapproved the findings that the claimant was given the receipt for execution while she was being treated by Dr. Chaffee, the defendant company's physician, and that the defendant misled the referee. The court stated that the evidence was that Dr. Chaffee was the claimant's doctor, not the defendant's.

Concluding that it could neither affirm nor reverse the award on the state of the record before it, the court ordered the board to make specific findings since, in the court's opinion, the board's statement that the receipt was not valid was a mere conclusion not based upon specific facts found by the board.

The board, in its final opinion said: "Our reason behind the affirmation, concisely stated at this point, was that the original final receipt in the instant case never was delivered by the defendant to the compensation authorities for their acceptance or rejection. As a result the board concluded that the original open compensation agreement entered into by the parties on February 29, 1952, approved by the compensation bureau on March 11, 1952, was still in force. This board also ruled that the petition filed by the claimant, although named a petition to review, was properly treated as a petition to enforce an open agreement". The board also concluded that "neither the bureau nor the board are commanded to inform anyone whether it considers a receipt bona fide and valid. In the instant case the matter did not become judicially determinable until an appeal was taken from the referee's decision," and prior to that time the board was not in a position to determine whether the receipt was valid so as to extinguish the claimant's rights unless set aside pursuant to Section 434 of the act. The board went on to say that "the important thing . . . is that claimant never delivered the original final receipt

to the defendant so as to permit the defendant to file with the bureau copies of the final receipt for its approval or rejection". The board further stated its opinion that as a result of this the claimant not only required continued medication, treatment and hospitalization for her original injury but was under the care of physicians from February 16, 1952 until February, 1954, and maybe longer.

The board then gave its reasons for concluding that there was no valid and bona fide receipt as follows:

"In the instant case, the fact that the claimant did not deliver to defendant the original Final Receipt and cash the final compensation check, the fact that this claimant suffered pain all during the period of time that she worked for the defendant after returning to work in March of 1952, the fact that claimant was hospitalized for her bursitis five days after leaving her employment, the fact that on October 10, she signed an application for compensation benefits setting forth that her injury was in some measure responsible for her hospitalization and the fact that the defendant never delivered to the Compensation Bureau the required Final Receipt or a good and sufficient reason for failure to deliver said final receipt, leads us to conclude that the photostatic copy of the carbon copy of the Final Receipt was not a valid and bona fide final settlement receipt. We determined, therefore, that the final receipt delivered to the Compensation Bureau is not approved as an instrument of a Final Receipt." The board once again concluded that the compensation agreement was in full force and effect and would remain so until a final receipt was accepted by the compensation authorities or a termination petition was filed and determined in favor of the defendant.

The board then adverted to the question whether the defendant was responsible for improper conduct toward the claimant. It reiterated its opinion that the claim-

ant was improperly treated but stated that the court of common pleas took issue with this determination and that it was in any event superfluous. It then specifically left this question unanswered and rested its opinion entirely upon the continuation and validity of the open compensation agreement and the invalidity of the final receipt.

On appeal, the common pleas court reversed the board, disallowed the compensation award and entered judgment for the defendant.

Judge ROSSITER'S opinion makes clear the reasons for this reversal. The court evidently felt that (1) the plaintiff was a malingerer and had not proved that she suffered any ill effects from this accident since March 30, 1952 and that the board misinterpreted the statement in the insurance application as to the contents of the hospital records; (2) that the board improperly found misconduct on the part of the defendants; (3) that the final receipt given by the appellant to her employer was prima facie evidence of a termination of disability; that the board erred in placing upon the defendant the impossible duty of filing the final receipt when the plaintiff retained the executed original in her files, and that the bureau was seriously derelict in its duty in not approving or disapproving it within thirty days after it had received the photostat, and (4) that the award unduly penalized the defendant.

From the judgment of the common pleas court an appeal was taken to this Court.

In our opinion the case turns on the validity of the final receipt. If the board is correct in its conclusion that the receipt was invalid the other points made by the court are without significance.

The following are the relevant provisions of the Workmen's Compensation Act:

(1) "A final receipt, given by an employe . . . entitled to compensation under a compensation agree-

ment . . . shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement . . ." (Act of June 2, 1915, P. L. 736, §434, as amended, 77 PS §1001).

(2) "All agreements for compensation . . . and all receipts executed by any injured employe . . . shall be valid and binding unless modified or set aside as hereinafter provided". (Section 407, of the Act of 1915, supra, as amended, 77 PS §731).

(3) "All agreements for compensation may be . . . terminated at any time by a supplemental agreement approved by the department, if the incapacity of an injured employe has . . . temporarily or finally terminated." (Section 408 of the Act of 1915, supra, as amended, 77 PS §732).

(4) "Whenever an agreement or supplemental agreement shall be executed between an employer and an employe . . . as provided by this act, such agreement shall be executed in triplicate. Two copies thereof, signed by all parties in interest, shall be mailed or delivered to the department within thirty days after execution. It shall be the duty of the department to examine the agreement to determine whether it conforms to the provisions of section four hundred seven, to notify the parties thereto of its validity or invalidity, under the aforesaid section, within thirty days after the copies of the agreement have been mailed or delivered to it, and, if the agreement be approved, to send to the employe, together with such notification of its approval, a copy of the agreement . . ." (Section 409 of the Act of 1915, supra, as amended, 77 PS §733).

It is the last quoted section which has given rise to the controversy. There has been little litigation under this section and it has not heretofore been interpreted with reference to such facts as those before us.

In our opinion Section 409 modified all the other sections quoted above. As a result a final receipt is

prima facie evidence of termination of disability and valid until set aside upon petition, only if the provisions of Section 409 have been complied with. We agree with the board that a final receipt is not valid under Section 409 of the act unless two copies thereof signed by all parties in interest are mailed or delivered to the department within thirty days after execution and approved by the bureau. This may be directory only as to the thirty day provision (Cf. *Klingerman v. Chestnut*, 56 Dauphin 304 (1945)), but there must be substantial compliance with the requirement that two executed copies of the final receipt be mailed or delivered to the Bureau of Workmen's Compensation (through which the department operates in this matter). Until this is done, there is no duty upon the bureau to approve or disapprove the agreement.

Here the two executed copies were not sent to the bureau. In fact, no executed copy was ever sent to the bureau. Only a photostat of a copy was mailed. The duty to deliver or mail these executed copies to the bureau rests upon the defendant, because (1) it is the defendant who seeks the advantage of the final receipt, in this as in all other cases, and (2) the act is a remedial one and should be interpreted favorably to the claimant if there is any ambiguity.

We do not agree with the court below that the defendant is relieved of the duty of mailing these copies to the bureau because it was impossible to do so when the claimant retained the executed original in her files. In the first place, it may well be that until the original was returned to the defendant there was no final receipt "given" by the defendant, so as to constitute even prima facie evidence of termination of liability under Section 434, supra. But if we assume that what was done here constituted a giving of a final receipt, the defendant had two executed copies in its possession and it could have forwarded these copies to the bureau

as the act requires. It would seem the part of common prudence for an employer, in this situation, faced with the explicit provisions of Section 409, to forward the two executed copies in its possession and keep the photostat for its own records.

Since there was no compliance with Section 409 by the defendant, there was no obligation under the statute upon the Workmen's Compensation Bureau to approve or disapprove the final receipt. Until the executed copies had been forwarded and the final receipt approved by the bureau, it was not valid and effective. Such approval might well be implied by failure of the bureau to communicate any objection to the defendant, but it is hard to find any implied approval when the bureau did not send a copy of the agreement and its approval to the employe as Section 409 requires. But more importantly, failure of the defendant to mail the executed copies to the bureau removes any foundation for an inference of approval.

Since there is no valid final receipt in existence the duty of the defendant to pay compensation has continued and will continue until a petition to terminate has been filed and ruled upon favorably.

The court below has adverted to the relative derelictions of the parties and the bureau. It is enough to say that there is no legal duty to be found in the act or elsewhere upon the plaintiff to execute or deliver a final receipt. If she wishes to compel her employer to file a petition to terminate nothing in the act prevents it. The defendant did not follow up the matter and under the act it is its duty to do so if it wishes to be relieved of its obligation to continue to pay compensation. As we have said above, no duty is placed upon the department or bureau until the defendant has forwarded to it two executed copies of the final receipt.

The burden is upon the defendant to plead and prove termination of disability and it has not done so.

If, as the court below thinks, the defendant is being penalized, this is due to its own neglect and the requirements of the act. However, it is not so clear to us that it is being unfairly penalized. There is evidence in the case that the plaintiff was still suffering from the effects of the injury in September, 1952. The second hand report of the hospital record, which was introduced by the defendant, and therefore cannot be objected to by it as hearsay, indicates a persisting disability as of that time. The appellant's own testimony indicates that it still disabled her until the time she testified in 1955, although admittedly her nonexpert testimony would be insufficient on this point if she had the burden of conclusive proof.

Under the state of this record, we cannot tell whether defendant will be paying compensation for a nonexistent injury under our decision or whether, on the other hand, if we affirmed the court below, the plaintiff would be deprived of compensation for a persisting disability.

We conclude that under the facts found by the board it was justified in drawing the inference that no valid and effective final receipt exists, and that the burden was upon the defendant to file a petition for termination and prove a cessation of disability, if it wished to be relieved of further payments. Since this was not done, the award must be affirmed.

The judgment of the court below is reversed. The decision and award of the Workmen's Compensation Board is reinstated.