## Shiery *v.* Lauffer Tire Service, Inc. et al., Appellants.

Argued November 16, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Irwin M. Ringold,* with him *Robert B. Murdock,* for appellants.

*Karl E. Weise,* with him *B. Patrick Costello,* and *Hirsch, Truxall and Weise,* for appellants.
*B. Earnest Long,* for claimant, appellee.

OPINION BY WRIGHT, J., January 16, 1962:
This is a workmen's compensation case involving cross-appeals by two insurance carriers. Simply stated,

compensation for claimant's disability. The situation is somewhat complicated both factually and procedurally, and we will endeavor to summarize it as briefly as possible.

On and prior to June 10, 1958, the claimant, Clayton Shiery, of Everson, Fayette County, was performing two jobs. He drove a school bus for Raymond W. Beck, of Scottdale, Westmoreland County, hereinafter referred to as Beck, working between five and six hours a day and earning an average weekly wage of $45.00. During the middle hours of the day and following his afternoon bus run, also on Saturdays, he worked as a repairman for Lauffer Tire Service, Inc., likewise of Scottdale and hereinafter referred to as Lauffer, earning an average weekly wage of $44.10. At about noon on June 10, 1958, claimant was engaged in his employment for Lauffer. A truck tire, which claimant was inflating, exploded and he was struck by the rim: "I thought it knocked my legs off". Although suffering severe pain in the legs, claimant continued to work for Lauffer until July 11, 1958, but was unable to continue thereafter. It so happened that June 10, 1958, was the last day of school and, following the morning bus run which he had completed, claimant was not required to perform any further service for Beck until September. At that time claimant could not bend his left leg but, by adjusting the driver's seat, he was able to drive the school bus. On March 12, 1959, while engaged in his employment for Beck, claimant was involved in a motor vehicle collision. As a result of this accident, he sustained a whip-lash injury and is required to wear a neck collar.

From a procedural standpoint, the controversy had its inception on October 9, 1959, when Shiery filed a claim petition against Lauffer on the ground that he was partially disabled by the accident of June 10, 1958. As a matter of defense, Lauffer answered that claimant

was "receiving maximum compensation benefits" from Beck as a result of the accident of March 12, 1959. At the hearing before the Referee, Dr. Vincent P. Pisula testified as to his examination of claimant on June 10, 1958, and his subsequent treatment. It was his conclusion that claimant suffered a permanent partial disability of fifty percent as a result of this accident. On behalf of Lauffer, a medical report was received from Dr. John B. Blakely to the effect that his examination of the claimant revealed a partial disability of thirty-five percent as a result of the leg injuries. The Referee found (1) that claimant had a fifty percent disability as a result of the accident of June 10, 1958; (2) that claimant "also has a very serious result from the second injury of March 12, 1959, and in the opinion of your Referee as a result of the two injuries, the man is and has been totally disabled". It was the conclusion of the Referee that the claimant should receive the maximum statutory rate of $37.50 per week, and that each employer should be charged with fifty percent thereof or $18.75 per week. He further concluded that Lauffer's liability should terminate at the end of the statutory 350 week period for partial disability, whereupon "compensation at the full total disability rate shall be resumed by the carrier for the second employer".

From the decision and award of the Referee, Lauffer appealed to the Workmen's Compensation Board. Beck then entered the picture by filing a petition for leave to intervene, wherein it was admitted that claimant had become totally disabled following the accident of March 12, 1959, and that an agreement, No. 6,987,-418, had been executed between Beck and Shiery on such basis and compensation paid thereunder. It was alleged that Beck subsequently learned that Shiery had filed a claim against Lauffer, whereupon a petition was presented to review agreement No. 6,987,418, as

well as the petition to intervene in the instant proceeding involving Shiery and Lauffer. The Board made the following pertinent findings: "Summarizing the salient facts, we find: (a) The claimant suffered a 50 per cent partial disability as a result of the accident of June 10, 1958, and that he worked from June 10, 1958 to July 11, 1958. He did not work from the latter date to September 1, 1958. (b) Claimant worked as a school bus driver from September 1, 1958 to June 7, 1959, at a weekly wage of $45.00, but he did not work for Lauffer. (c) Since July 6, 1959, the claimant is totally disabled as a result of the second accident on March 12, 1959". As a consequence of these findings, the Board made an award as follows: Lauffer was directed to pay compensation at the rate of fifty percent of sixty-six and two-thirds percent of $44.10, or $14.70 per week, from July 12, 1958 to July 6, 1959, and thereafter at the same rate for a future indefinite period within the limitations of the statute; Beck was directed to pay compensation at the rate of $22.80 per week from July 6, 1959, for a future indefinite period within the limitations of the statute.

Following the decision of the Board, Beck filed a petition to amend, alleging that claimant's fifty percent disability should have been computed on a total average weekly wage of $89.10, rather than on the sum of $44.10 employed by the Board. To this petition Lauffer filed an answer supporting the calculation of the Board, asserting that claimant's partial disability had not resulted in a loss of earning power, and questioning the Board's action in permitting Beck to intervene. Claimant also filed an answer joining in the prayer of Beck's petition. The Board thereafter filed an amended award in which the amount of compensation Lauffer was directed to pay was increased to $27.50, and the amount of compensation Beck was directed to pay was decreased to $10.00 per week.

Lauffer then appealed to the Court of Common Pleas of Westmoreland County. That tribunal concluded that there was competent evidence to support the Board's finding that claimant suffered a fifty percent partial disability as a result of the accident of June 10, 1958, and that, following the accident of March 12, 1959, claimant suffered total disability. The court below further held that the Board had properly permitted Beck to become a party to the proceeding. However, the court below was of the opinion that the interests of justice would best be served by prorating the compensation between the two employers. Judgment was therefore entered against Lauffer from July 12, 1958 to July 6, 1959, at the rate of $27.50 per week and thereafter at $18.75 per week; and against Beck at the rate of $18.75 per week from July 6, 1959. Both Beck (No. 303 April Term 1961) and Lauffer (No. 305 April Term 1961) have appealed to this court.

Lauffer's statement of the question involved on this appeal is as follows: "1. Where a claimant in a Workmen's Compensation case is receiving compensation for total disability as the result of an accident, may he also receive additional compensation for a prior accident? 2. May the compensation authorities adjudicate a case that is not properly before them, and without any hearing thereon? 3. May the Court of Common Pleas on appeal to it from a decision of the Workmen's Compensation Board, reform an award and enter judgment in effect modifying an open compensation agreement where there has been no hearing on a petition for modification of such agreement?" Beck's statement of the question before us is as follows: "Where in a Workmen's Compensation case the Compensation Authorities have determined the respective liabilities of two employers in whose employment a claimant was injured at different times, can the lower Court disregard such determination and apportion compensation bene-

fits on an equal basis between the two employers simply because the claimant suffered a fifty percent disability in the first accident and became totally disabled following the second accident?"

Having carefully reviewed this involved record, we agree with the court below that there was sufficient evidence to support the factual findings made by the Board. They are therefore binding upon us. See *Banas v. Eagle Coal Co.*, 196 Pa. Superior Ct. 580, 175 A. 2d 897; *McIntosh v. Sylvania Co.*, 195 Pa. Superior Ct. 198, 171 A. 2d 569. No question is raised by either appellant as to claimant's total disability status following the accident of March 12, 1959. In fact, Lauffer bases its position upon the happening of that accident, and the ensuing agreement for compensation. It is readily apparent that claimant has become a pawn in what is essentially a controversy between two insurance carriers. Under the circumstances, we are of the opinion that it was proper to adjudicate their respective liability in the instant proceeding. Cf. *Healey v. Carey, Baxter & Kennedy*, 144 Pa. Superior Ct. 500, 19 A. 2d 852; *Eldridge v. Blue Ridge Textile Co.*, 160 Pa. Superior Ct. 578, 52 A. 2d 339; *Kracoski v. Bernice White Ash Coal Co.*, 183 Pa. Superior Ct. 155, 130 A. 2d 190.

Conceding that there was evidence to support an award for partial disability as a result of the accident of June 10, 1958, Lauffer argues that "the compensation authorities should have awarded compensation to claimant in this case for partial disability up to the time of the second accident and then suspended the award as of that date, i.e. March 12, 1959, or at the most July 6, 1959. The Board should have dismissed the petition to intervene because the petition itself stated that claimant was totally disabled as a result of the second accident for which an open agreement had been entered into paying him compensation for total

disability". Reliance is placed upon *McGahen v. General Electric Co.*, 195 Pa. Superior Ct. 651, 172 A. 2d 324. That decision has since been reversed by our Supreme Court. See *McGahen v. General Electric Co.*, 406 Pa. 57, 177 A. 2d 85. In any event, the *McGahen* case presented an entirely different factual situation.

With regard to Lauffer's complain that agreement No. 6,987,418 has in effect been modified without a hearing, we are in accord with the view of the court below that a further hearing is unnecessary. On this point Lauffer cites *Grosjean v. Murrell*, 183 Pa. Superior Ct. 530, 132 A. 2d 357, but that case is in no way controlling. Grosjean was injured in 1936 in a street car accident, and received compensation on the basis of total disability for the maximum statutory period. In 1947 he was injured when thrown from a truck. The Board found that he was seventy-five percent partially disabled as a result of the 1947 accident, and that this disability was not attributable to the 1936 accident. In 1953 he sought to increase his disability status from seventy-five percent partial to one hundred percent total. We held that the award for the 1947 accident established that the 1936 accident was not a contributing factor so far as the seventy-five percent disability was concerned, but that it was not conclusive as to the additional twenty-five percent disability.

Both appellants agree that the court below erred in substituting its award for that of the Workmen's Compensation Board. Lauffer contends that, since claimant was totally disabled after the second accident and Beck agreed to pay for total disability, its (Lauffer's) liability should be terminated. Beck contends that the award made by the Board was correct, and that an apportionment on an equal basis "has no justification in existing law". The claimant has joined in Beck's brief. While we are not without sympathy for the position of the court below, which was endeavoring to arrive at

"an equitable and just" result, it is our view that the case was properly determined by the Board and that its award must be reinstated. We are not in accord with Lauffer's assertion that claimant will thereby be receiving "additional compensation". Cf. *Melfi v. Dick Construction Co.*, 148 Pa. Superior Ct. 406, 25 A. 2d 743.

Judgment reversed, and the record is remanded to the court below for the entry of judgment in accordance with the amended award of the Workmen's Compensation Board.

----

DISSENTING OPINION BY FLOOD, J.:

The board found that claimant suffers a fifty per cent disability as a result of the accident of June 10, 1958, while working for Lauffer Tire Service, Inc., and that he has been totally disabled since March 12, 1959, when he sustained a second accident while working for Raymond W. Beck. Despite these findings it has ordered Lauffer to pay $27.50 per week and Beck only $10. Lauffer, who under no circumstances can be held responsible for more than fifty per cent of claimant's disability, is ordered to pay seventy-three per cent of his compensation. Beck who is responsible for at least fifty per cent of his disability is ordered to pay only twenty-seven per cent of his compensation. No precedent is cited for this and I cannot believe it to be correct.

The award against each employer must be cut down because the total payable by both cannot exceed maximum compensation of $37.50. I cannot see the justification for a holding that because the Lauffer accident happened first and Lauffer consequently was obligated to pay $27.50 weekly compensation until the date of the second accident, it should have to continue to pay this amount while Beck gets all the benefit from

the limitation of compensation. Lauffer is responsible for no more than fifty per cent of his disability and should not be obligated to pay more than fifty per cent of the total compensation due him.

I would affirm the lower court.