## Banas *v.* Eagle Coal Company (et al., Appellant).

Argued November 13, 1961. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Robert W. Smith, Jr.,* with him *Smith, Best & Horn,* for appellant.

*Henry J. Mahady,* with him *Mahady & Mahady,* for appellee.

OPINION BY WRIGHT, J., December 14, 1961:

This is a workmen's compensation case in which the Referee, affirmed by the Board, found that claimant had sustained a compensable accident, and made an award on the basis of total disability for forty-three weeks, and thereafter for thirty per cent partial disability. Upon appeal to the Court of Common Pleas of Westmoreland County, the order of the Board was affirmed, and judgment was entered in favor of the claimant. The employer's insurance carrier has appealed. The factual situation appears in the following excerpt from the opinion below:

"Claimant was a mine foreman for the defendant coal company and prior to that time was an assistant mine foreman and fire boss for the same company. All of these jobs were supervisory in nature and required little or no manual work, but only supervision, direction and planning.

"On May 18, 1959, the defendant coal company closed the mine, but advised the claimant that he was to continue in their employment until the end of the month. He was directed to, and did occasional manual labor and maintenance jobs about the mine. On May 25, 1959, he was directed to change a track switch in the mine. This entailed lifting and dragging the switch frog, which weighed about 100 pounds, the track rails, which weighed 200 pounds, and also the lifting and laying of 40 pound wooden ties underneath the track.

"The testimony at the time of the hearing discloses that the work of laying track and switch is considered teamwork, or at least two men undertake to do the job. The testimony further disclosed that it was one of the more difficult tasks in this type of mining operations. In the instant case the claimant undertook as one man, accustomed only to supervising, to do the work of two laborers.

"The claimant stated that while doing this work he began to feel sick and finally sat down to rest; that he felt pains from a heart attack and that he finally sought assistance from the chief mechanic, who was outside the mine. The chief mechanic called Dr. Blair and the doctor sent claimant to the hospital, after giving him a hypodermic, where he remained for a period of twenty-three days.

"The Referee found as a fact that the claimant had, through unusual exertion, suffered a heart attack in the course of his employment, and he also concluded that this was a compensable accidental injury under the Act, and awarded the claimant total disability from May 25, 1959, to March 20, 1960, and further granted partial disability payment of 30 per cent from March 20, 1960, and continuing to date".

Appellant's first contention is that there was not "sufficient competent testimony from which it could be determined that the claimant sustained an accident". The cases of *McFeeley v. Brownsville School District*, 159 Pa. Superior Ct. 432, 47 A. 2d 925, and *Bonaduce v. Transcontinental Gas Pipe Line Corp.*, 190 Pa. Superior Ct. 319, 154 A. 2d 298, upon which reliance is placed, each involved a claimant who had pre-existing heart disease. In the case at bar, Doctor John F. Blair, the company physician, found no evidence of a pre-existing heart condition. His diagnosis was "acute coronary occlusion with myocardial infarction posterior". Dr. Blair stated that, in his professional opinion, the unusual strain which claimant "went through working was directly responsible for his heart attack".

For the appellant, Dr. Wendell B. Gordon made one examination of the claimant, on October 15, 1959. He conceded that claimant had sustained a myocardial infarction on May 25, 1959, but stated that, while there was no history of prior heart trouble, there "must have been" a pre-existing coronary sclerosis, and that

claimant's heart attack was not precipitated by his work. The Board was "not impressed with" Dr. Gordon's testimony. Where the testimony adduced on the pivotal issue is conflicting, it is the function of the Board to resolve the conflict, and its finding, if supported by the evidence, is conclusive on appeal: *Gallihue v. Auto Car Company*, 184 Pa. Superior Ct. 598, 135 A. 2d 817. The evaluation of testimony is within the province of the compensation authorities: *Susman v. Kaufmann's Dept. Store*, 182 Pa. Superior Ct. 467, 128 A. 2d 173.

Appellant argues that, on May 18, 1959, claimant assumed the duties of an ordinary laborer, and that he was merely performing those duties. Even if claimant is viewed as an ordinary laborer, the testimony clearly reveals that he undertook the performance of a task which required considerably more exertion than would be expended in the usual course of such employment. The mine superintendent testified that the services of two men were ordinarily required to lay a switch because of the heavy work involved, which he characterized as "extremely hard . . . strenuous work". This testimony was corroborated, not only by that of the claimant, but also by that of the company physician himself. It is well settled that, in the absence of a finding of prior heart disease, the occurrence of a heart attack during unusual or extraordinary exertion constitutes an accident: *Adams v. Dunn*, 192 Pa. Superior Ct. 319, 162 A. 2d 42. A somewhat comparable factual situation in which a cerebral hemorrhage resulting from overexertion was held to be an accident appears in *Lemmon v. Pennsylvania Department of Highways*, 164 Pa. Superior Ct. 254, 63 A. 2d 684.

Appellant's second contention is that the record is devoid of testimony to support an award for thirty percent partial disability. It is argued that no witness fixed claimant's disability at thirty per cent partial,

and that the testimony shows to the contrary that claimant was physically able, as of March 20, 1960, to resume his former occupation. The extent of physical disability is a complex factual matter dependent upon many variables, and a medical witness is not required to state it mathematically: *Spina v. Gahagan Construction Corp.*, 184 Pa. Superior Ct. 420, 135 A. 2d 760. And see *Kish v. T. F. Steele Coal Co.*, 185 Pa. Superior Ct. 257, 137 A. 2d 855. The issue of the extent of a claimant's partial disability is a question of fact for the Board: *McIntosh v. Sylvania Co.*, 195 Pa. Superior Ct. 198, 171 A. 2d 569. Among the factors to be considered, in addition to anatomical disability, are mental outlook, industrial background, age, education, type of occupation which could be performed in which the particular impairment would not be a total bar, and whether such work exists: *Benedict v. Fox*, 192 Pa. Superior Ct. 197, 159 A. 2d 756. See also *Weinstock v. United Cigar Stores Co.*, 137 Pa. Superior Ct. 128, 8 A. 2d 799. We are not in accord with appellant's assertion that the instant case is controlled by *Ede v. Ruhe Motor Corp.*, 184 Pa. Superior Ct. 603, 136 A. 2d 151. In that case the claimant had returned to work, and the evidence disclosed that there was no loss of earning power.

Claimant was forty-six years of age at the time of the heart attack on May 25, 1959. Following admission to the hospital, he was in an oxygen tent for six days. After his release from the hospital on June 17, 1959, claimant was confined to bed at home for three weeks. He still requires medical attention, including a monthly cardiograph, and had not yet returned to work. Dr. Blair testified as follows: "A. He wanted to go to work —I forget now—sometime in October or November he wanted to get away and do something, and I said if he could get very light work we would consent to it— knowing that no such light work was available I felt free to recommend it to him to satisfy him. Q. That

was only to satisfy his mind? A. Yes. . . . Q. And, Doctor, what is your prognosis? A. Well, I was considering him in a light work class. I wouldn't consider him doing that same work again. General light work I would say he could do that". Claimant testified that Dr. Blair "did tell me I could do light work, but there isn't any light work in the coal mine". Dr. Gordon testified as follows: "A. Well, I thought he was sufficiently recovered when I saw him to go back to work . . . I felt that he should have started back on part time work at that time. I would not want to start him right in on full time—I would want him to see how it goes".

After reviewing this record in the light of the relevant factors, we agree with the lower Court that the testimony warrants the percentage evaluation of partial disability arrived at by the compensation authorities.

Judgment affirmed.