Workmen's Compensation Appeal Board of The Commonwealth of Pennsylvania and Mrs. Frank Varenda, Widow of Frank M. Varenda, Deceased, Appellees, *v.* Jeddo Highland Coal Company and Lackawanna Casualty Co., Insurance Carrier, Appellants.

Argued March 6, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Anthony J. Piazza,* with him *John R. Lenahan, Joseph A. Murphy,* and *Lenahan, Dempsey & Murphy,* for appellants.

*Anthony C. Falvello,* with him *Conrad A. Falvello,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER, May 15, 1975:

The narrow issue in this workmen's compensation case is whether or not a fatal heart attack suffered by Frank Varenda (decedent) is a compensable injury under Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act)[1] so that his widow, Mrs. Frank Varenda (claimant), may receive benefits.

---

1. Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §411(1) (Supp. 1974-75).

Decedent had been employed by the Jeddo Highland Coal Company (appellant) for about 15 years as an oiler. His job was somewhat unusual in that he worked 7 days a week for at least 11 months prior to his death. He died on November 22, 1972, at which time he and a coworker, Joseph Sabatella, were attempting to move a heavy cable, a task which decedent had performed many times before. The undisputed cause of death was a coronary occlusion or heart attack.

On January 9, 1973, claimant filed a fatal claim petition seeking workmen's compensation benefits on account of decedent's death. After two hearings had been held, a referee awarded benefits. The referee's award was then affirmed by the Workmen's Compensation Appeal Board (Board). Appellant now appeals to us.

The question of whether or not decedent suffered a compensable injury under the Act depends on our interpretation of Section 301(c)·(1). This clause, as amended by the Act of March 29, 1972, P. L. 159, §7, effective May 1, 1972, and the Act of October 17, 1972, P. L. 930, §2, now reads as follows:

"(c)(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, *arising in the course of his employment and related thereto,* and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. *The term 'injury arising in the course of his employment,' as used in this article,* shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or

because of his employment; but *shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer,* whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment." (Emphasis added.)

Our careful review of the 1972 amendments to this section and other sections of the Act[2] compels the conclusion that it is no longer necessary for a claimant to prove an "accident" in order for his injury to be compensable. The Legislature, by deleting the word "accident" from Section 301(c) and substituting for it the word "injury" in the other sections, has made it clear that injuries sustained by employes after May 1, 1972 are compensable if (1) they arise in the course of employment and (2) are related thereto.[3]

In the present case, there is little doubt that decedent's injury arose in the course of his employment. The referee's findings, as supported by the uncontradicted evidence in this case, reveal that decedent was on the job performing one of his usual duties at the time of his death.[4] Since the term "injury arising in the course of

---

2. Section 101, 77 P.S. §1; Section 105, 77 P.S. §25; Section 204, 77 P.S. §71; Section 301(a), 77 P.S. §431; and Section 304, 77 P.S. §482 (Supp. 1974-75).

3. Since the necessity of proving an "accident" has been removed, the judicially enunciated categories of accident will have no usefulness in all cases arising after May 1, 1972. *See Hinkle v. H. J. Heinz Co.,* 7 Pa. Commonwealth Ct. 216, 298 A. 2d 632 (1972).

4. Decedent was out of sight of his coworker at the time of his injury. However, the evidence in this case (the coworker's

employment" is defined in Section 301(c)(1) to include all injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, it is clear that decedent's injury is included in this term.

Our conclusion that decedent's injury arose in the course of his employment does not end our inquiry. As Section 301(c)(1) makes clear, in order to be compensable, his injury must also be shown to be related to his employment. In other words, the causal connection between decedent's work and his injury and subsequent death must also be proved.[5]

Our careful review of the record convinces us that the causal connection between decedent's work and his heart attack was adequately proved by the testimony of Dr. Arthur L. Koch. Dr. Koch testified unequivocally that decedent's death was directly related to his work. In response to a hypothetical question posed by claimant's counsel, Dr. Koch stated:

> "Yes, I believe it's [decedent's death is] directly directly related to his work. The fact that he worked long hours; very little time off; *and the circumstances,* the instantaneous nature of his death, all these lead up to the fact that it happened on the job." (Emphasis added.)

Dr. Koch elaborated further on "the circumstances" when he stated, in response to claimant's counsel's question as to why decedent's work activity caused his death:

> "According to the gentleman who preceded me [Mr. Sabatella]—his testimony—this man had to crouch,

---

testimony on the events preceding the injury, the position of decedent's body in relation to the cable and a hook used to pull the cable, and the usual manner in which the task of moving the cable was performed) adequately supports the referee's finding that decedent was in the process of moving the cable when he suffered his attack.

5. The burden of proof is on the claimant to show that he has suffered a compensable injury. *See Hinkle, supra.*

get into a spot, and the way he was found lying, he must have exerted himself, one way or the other, to have fallen backwards, if I understand things correctly . . . ."

We hold that this testimony adequately proved a causal connection between decedent's work and his fatal heart attack. Although it was rebutted by the testimony of appellant's medical witness, the conflict in medical testimony was resolved by the referee in claimant's favor. Such a resolution was within his power as the fact finder and we are bound by his determination. *Hoy v. Fran Lingerie,* 9 Pa. Commonwealth Ct. 542, 308 A. 2d 640 (1973).

Appellant also argues that Dr. Koch's testimony was based on an improper hypothetical question. Our review of the hypothetical question posed to Dr. Koch compels the conclusion that it was entirely proper. Moreover, even if the hypothetical question was improper, appellant's counsel's failure to object at the time the question was posed precludes, at this time, an attack on the propriety of the question. *Gordon v. State Farm Life Insurance Company,* 415 Pa. 256, 203 A. 2d 320 (1964).

Therefore, we issue the following

ORDER

AND NOW, this 15th day of May, 1975, the affirmance by the Workmen's Compensation Appeal Board of the referee's order dated March 14, 1974, relative to the claim of Mrs. Frank Varenda is hereby affirmed. Accordingly, it is ordered that judgment be entered in favor of Mrs. Frank Varenda and against Jeddo Highland Coal Company in the amount of $71.91 per week, beginning November 22, 1972 and continuing for an indefinite period, and for the sum of $750 on account of decedent's burial expenses, together with interest at the rate of 10 percent per annum on deferred installments from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.