388 A.2d 659

**WORKMEN'S COMPENSATION APPEAL BOARD and Josephine Squillacioti, widow of Vincent P. Squillacioti, Deceased, Appellees,**

v.

**BERNARD S. PINCUS COMPANY, Appellant.**

**WORKMEN'S COMPENSATION APPEAL BOARD of the Commonwealth of Pennsylvania, and Margaret E. Lenz, widow of Raymond Lenz, Deceased, Appellees,**

v.

**AYERS PHILADELPHIA, INC. and Pennsylvania Manufacturers' Association Insurance Company, Appellants.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided June 2, 1978.

Reargument July 7, 1978.

288

John F. McElvenny, Michael P. McKenna, Philadelphia, for appellants.

Frank J. Eustace, Jr., Philadelphia, for appellees.

David F. Kaliner, Philadelphia, for appellant.

Modell, Pincus, Hahn & Reich, Jerry Zaslow, Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

These two Workmen's Compensation appeals involve identical questions of whether the fatal heart attacks suffered by claimants' decedents were "injuries" "related" to their employment so as to be compensable under The Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq. The facts are undisputed in each case and are as follows.

### NUMBER 523

Claimant Josephine Squillacioti is the widow of Vincent Squillacioti, who died on July 28, 1972, while on the business of his employer, appellant Bernard S. Pincus Company. The decedent was employed as a truck driver whose duties included lifting and carrying meat products from the inside of appellant's truck to the tailboard of the truck where employees of appellant's consignees would remove the cargo.

On July 28, 1972, decedent was engaged in such work on appellant's behalf. Decedent had unloaded approximately one-half of the 12,776 pounds of cargo in the truck that day when he died suddenly. Death was determined to have been caused by a myocardial infarction, coronary occlusion and arteriosclerosis (heart attack).

A referee's hearing was held on June 13, 1973. At the hearing it was established that decedent had a history of heart trouble. Claimant offered the expert testimony of a doctor who stated that decedent's heart attack resulted from the work in which he was engaged on behalf of his employer. Appellant's expert testified that decedent's heart attack was not caused by the rigors of his employment, but resulted from the natural progression of the pre-existing heart disease.

The Referee entered an award on August 23, 1974, in favor of decedent's widow. That award was affirmed by the Workmen's Compensation Appeal Board on April 17, 1975. Appellant timely appealed to the Commonwealth Court and that court affirmed. *Workmen's Compensation*

*Appeal Board v. Pincus,* 24 Pa.Cmwlth. 655, 357 A.2d 707 (1976). We granted appellant's petition for allowance of appeal, and this appeal followed.

## NUMBER 570

Raymond Lenz, claimant's now-deceased husband, was employed as a cutter and spreader by appellant Ayers Philadelphia, Inc. In the course of his employment, the deceased would spread material on a cutting table approximately twenty feet long. When the material was spread taut, decedent would cut the material with a special knife by pushing and guiding it over the material on the table. While engaged in such activity on September 14, 1972, decedent suffered a fatal heart attack. Decedent was 73 years old at the time and had a history of heart trouble.

A hearing was held before a Referee at which claimant's expert testified that the heart attack which caused death was precipitated by decedent's work. On appeal, the Workmen's Compensation Appeal Board set aside the Referee's determination and remanded for more specific findings of fact. In a second Referee's decision dated December 31, 1974, the Referee again found in favor of decedent's claimant. On June 5, 1975, this Referee's award was affirmed by the Workmen's Compensation Appeal Board. On appeal, the Commonwealth Court affirmed. *Workmen's Compensation Appeal Board v. Ayers Phila.,* 23 Pa.Cmwlth. 249, 351 A.2d 306 (1976). We granted appellant's petition for allowance of appeal and this appeal followed.

In each case appellants argue that as a matter of law, the Commonwealth Court, the Workmen's Compensation Appeal Board, and the Referee erred in concluding that a death by heart attack occurring in the circumstances of these cases is a compensable injury under the Pennsylvania Workmen's Compensation Act. More specifically, appellants in both cases contend that a heart attack under circumstances such as present here is not an "injury" and is not "related" to the decedent's employment. We do not agree.

■ There is no question but that the referees' findings of fact that the heart attacks were sustained by the decedents while on the job are supported by substantial evidence in each case. Both claimants presented medical evidence to the effect that the respective decedents had suffered heart attacks, and that in the opinion of these medical witnesses, the heart attacks were related to the employment activity being performed by the deceaseds prior to their deaths. Appellees, of course, presented their own medical witnesses who opined that the decedent's respective heart attacks were not related to their work but were the final culmination of a natural disease process. The referee is the finder of fact and the scope of appellate review is confined to an examination of the record to determine whether those findings of fact are supported by substantial evidence, and whether any constitutional rights were violated or error of law committed. *McGee v. L. F. Grammes & Sons, Inc.*, 477 Pa. 143, 383 A.2d 864 (1978); *Utter v. Asten-Hill Mfg. Co.*, 453 Pa. 401, 309 A.2d 583 (1973); *Universal Cyclops v. Workmen's Compensation Appeal Board*, 13 Pa.Cmwlth. 375, 320 A.2d 449 (1974).

The new Workmen's Compensation Act became effective in Pennsylvania on March 31, 1972, and is applicable here. Prior to the 1972 amendment, the Act required compensation only if the employee was injured or killed by an "accident" occurring in the course of employment. Furthermore, prior to 1972, the Act defined "injury" to require "violence to the physical structure of the body." 77 P.S. § 411.

As amended, the statute eliminated the "accident" and "physical violence" requirements, and now provides in 77 P.S. § 431, that,

"*Every employer shall be liable for compensation* for personal injury to, or *for the death of each employe, by an injury in the course of his employment,* and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and

seven of this article: Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer, and no compensation shall be paid if, during hostile attacks on the United States, injury or death of employees results solely from military activities of the armed forces of the United States or from military activities or enemy sabotage of a foreign power." (Emphasis added.)

Furthermore, 77 P.S. § 411 provides that,

"(1) The terms *'injury'* and 'personal injury,' as used in this act, *shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto,* and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. *The term 'injury arising in the course of his employment,'* as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but *shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere,* and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment." (Emphasis added.)

Use of the word "accident" in the prior law lead to the development and application by the courts of the "unusual strain doctrine" and the "unusual pathological result doctrine." The "unusual strain doctrine" was applied in heart attack cases where the claimant was afflicted with a pre-existing heart condition. Under this doctrine, as previously applied in heart attack cases by the Pennsylvania courts, in order to support a finding of an "accident" as required by the Act, the claimant had to show that the injuries resulted from unusual strain or exertion in the course of employment. *See, Hilt v. Rosyln Volunteer Fire Co.,* 445 Pa. 149, 281 A.2d 873 (1971); *Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969); *Connelly Containers, Inc. v. Gahan,* 8 Pa.Cmwlth. 76, 301 A.2d 415 (1973).

Under the "unusual pathological result doctrine" as applied by the courts of this Commonwealth, recovery would be allowed if the injury was found to be an unexpected or unusual pathological result of the performance by claimant of his usual work in the usual manner provided there was no evidence of a pre-existing disease. *See, Hilt v. Rosyln Volunteer Fire Co., supra*; *Hamilton v. Procone, supra; Connelly Containers, Inc. v. Gahan, supra.*

In the cases at issue, both decedents had pre-existing heart conditions and application of the "unusual strain doctrine" would have been necessary under the prior law. Given the nature of their work assignments, application of this doctrine might have denied recovery to both complainants because in neither case was evidence presented that the decedents engaged in unusually strenuous activity at the time of the heart attack. In neither case, therefore, would their deaths have resulted from a work related "accident" as required by prior law. *See Hilt v. Rosyln Volunteer Fire Co., supra; Panther Valley School Dist. v. Workmen's Compensation Appeal Board,* 3 Pa.Cmwlth. 178, 318 A.2d 403 (1974); *Billick v. Republic Steel Corp.,* 214 Pa.Super. 267, 257 A.2d 589 (1969).

Despite the obvious change in the wording of the Act, appellants here urge us to continue to apply the above

tests, and to distinguish between an employee who sustains a heart attack while on the job, but who was in previously sound health, and one who suffered from a previously existing heart condition. As noted by one of the appellants here, the logic behind the "unusual strain doctrine" was founded on the fact that the claimant was required to show a causal connection between the heart attack and the rigors of employment. Where an individual suffered from a pre-existing heart condition, it was thought that the progression of the disease itself could trigger the heart attack at any time. Consequently, the requirement that unusual strain or exertion be shown was cast upon the claimant in an effort to assure proof that the heart attack resulted from employment activities and not simply from the natural progression of the disease. *See, Crispin v. Leedom and Worrall Co.*, 341 Pa. 325, 19 A.2d 400 (1941); *Scanella v. Salerno Importing Co.*, 2 Cmwlth. 11, 275 A.2d 907 (1971); *McGaw v. Bloomsburg*, 214 Pa.Super. 342, 257 A.2d 622 (1969). (On the other hand, significantly less proof of exertion or strain was required where the claimant was in previously sound health with no history of heart disease, it being required only that a causal relationship between the nature of the strain or exertion involved and the heart attack be established by medical proof. *See Baras v. Eagle Coal Co.*, 196 Pa.Super. 580, 175 A.2d 897 (1961)).

Appellees counter that the legislature intended to eliminate the requirements of the "unusual strain doctrine" when it eliminated the word "accident" from the Act and substituted the word "injury." We agree. As recently stated by the Commonwealth Court in *Commonwealth v. United States Steel Corp.*, 31 Pa.Cmwlth. 329, 376 A.2d 271 (1977),

"It will be recalled that the old law's requirement of an accident caused the development of the doctrines of unusual strain and unusual pathological result for application in circumstances where, although no 'lay accident' occurred, compensation was granted because, the injury being clearly related to employment, compensation should have been granted. The accident in the case of unusual

strain doctrine was supplied by finding that the injuries were the result of unusual exertion by a worker while performing a task not usual to his employment, and in the case of the unusual pathological result doctrine by findings that the accident occurred when the worker tore tissue or broke bones while performing usual work in usual fashion. Both doctrines caused difficulties for the profession, those relating to the unusual strain doctrine being described in considerable detail by Mr. Justice, later Chief Justice, Benjamin R. Jones in *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A.2d 601 (1969). Justice Jones asked the legislature to undertake a study of the desirability of revising the doctrine. No doubt as a result of that criticism and of general dissatisfaction with the rule that work-related injuries were not compensable except upon a showing of an accident, the legislature in 1972 removed the requirement of an accident."

Since the enactment of the 1972 amendments to the Workmen's Compensation Act, the Commonwealth Court has consistently held that where a decedent was performing his or her usual job assignment at the time of the fatal heart attack, and the connection between the work and the heart attack was supported by competent medical testimony, decedent's claimant was entitled to compensation. *See, Workmen's Compensation Appeal Board v. Bernard S. Pincus Company*, 24 Pa.Cmwlth. 655, 357 A.2d 707 (1976); *Workmen's Compensation Appeal Board v. Ayres Philadelphia, Inc.*, 23 Pa.Cmwlth. 249, 351 A.2d 306 (1976); *Workmen's Compensation Appeal Board v. Kanell Jewelers, Inc.*, 22 Pa.Cmwlth. 1, 347 A.2d 500 (1975); *Workmen's Compensation Appeal Board v. Auto Express, Inc.*, 21 Pa.Cmwlth. 559, 346 A.2d 829 (1975); *Workmen's Compensation Appeal Board v. Jeddo Highland Coal Company*, 19 Pa.Cmwlth. 90, 338 A.2d 744 (1975).

Appellants argue that the legislature intended to continue the prior law's requirement that "injury" be defined as "violence to the physical structure of the body." Under the new Act "injury" is not defined. Because the

time limitations on notice (77 P.S. § 631–633) and the statute of limitations (77 P.S. § 602), as well as 77 P.S. § 411 specify periods of time which begin to run from the date of the "injury," appellants argue that the legislature intended to continue the prior laws's established concept that injury is an event, and that therefore "diseases" could not have been intended to be included within the term "injury." We do not agree. In *Creighan v. Fireman's Relief and Pension Fund Bd.*, 397 Pa. 419, 155 A.2d 844 (1959), an analogous case dealing with the interpretation to be given to the term "injury" as used in the Fireman's Relief and Pension Fund Law of May 25, 1933, P.L. 1050, as amended, 53 P.S. § 23601 et seq., the court addressed the question of whether claimant's disability (tuberculosis of the respiratory system) was an "injury" within the meaning of the Pension Law. The Board argued in *Creighan* that claimant must

> "'point to a particular or definite occurrence, event or incident which brought on the disease' and that since the plaintiff's malady is 'one of a latent and insidious nature which progresses gradually and manifests itself over a long period of time,' it cannot be designated an injury." *Id.* 397 Pa. at 422, 155 A.2d at 845.

Significantly, the *Creighan* court noted,

> "Calling tuberculosis a disease does not take it out of the realm of pulmonary violence. It is often said of persons who die from coronary seizures that they have succumbed to 'heart disease'." *Id.* 397 Pa. at 424, 155 A.2d at 846–847.

The *Creighan* court defined injury in its common, non-technical sense, saying,

> "Webster's International Dictionary defines injury as:
> 'Damage or hurt done to or suffered by a person or thing, detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing . . . Synonyms: Detriment, hurt, loss, impairment, evil, ill, injustice, wrong . . . Injury is the general term for hurt of any sort, whether suffered by a person (often in the sense of a wrong) or a thing.'

It will be noted that nowhere in the definition is violence a preliminary sine qua non to injury. Thus, according to Webster, a not inconsequential authority on words, a breakdown of tissue in the lungs may (under certain circumstances) be as much an injury as a laceration of flesh and muscle or even a fracture of bone, . . . ."

*Id.* 397 Pa. at 423, 155 A.2d at 846.

■ We believe this definition to be equally applicable here. Decedents' heart attacks caused physical damage to the internal tissues of the heart. Such damage to a bodily organ is no less an injury than a broken leg or a cut arm, and as such was intended by the legislature to be compensable if related to the decedent's employment. As stated by the *Creighan* court, quoting from the Supreme Court of Massachusetts in *Burns Case*, 218 Mass. 8, 12, 105 N.E. 601, 603 (1914),

"In common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system [that] produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability."

397 Pa. at 425, 155 A.2d at 847.

■ Having concluded that the heart attacks suffered by the claimant's decedents were "injuries" within the meaning of the Workmen's Compensation Act, claimants are entitled to compensation because the referee properly found that the injuries were related to the decedent's employment. In each case the Referee found as a fact that the decedent was engaged in the employer's business at the time of the fatal heart attacks, and in each case claimant presented competent medical testimony stating that the decedent's heart attack was directly related to the rigors of his employment. Although this testimony was rebutted in both cases by the employers' medical witnesses, the conflicts were resolved by the referees in favor of the claimants. The weight and credibility to be afforded to the witness's testimony is a

matter for the Referee. Our inquiry is limited to the questions of whether the findings of fact are supported by substantial evidence. *McGee v. L. F. Grammes & Sons, Inc., supra,* 477 Pa. 143, 383 A.2d 864 (1978); *Utter v. Asten-Hill Mfg. Co., supra,* 453 Pa. 401, 309 A.2d 583 (1973). Our review of the records convinces us that, contrary to appellants' assertion claimants in each case have shown the required causal connection between the occurrence of the decedent's heart attack and the decedent's working duties so as to establish that the deaths were "related to" employment. We therefore affirm the orders of the Commonwealth Court.

PACKEL, former J., and ROBERTS, J., did not participate in the decision of these cases.

POMEROY, J., filed a concurring and dissenting opinion.

POMEROY, Justice, concurring and dissenting.

Like the majority, I believe that under the amended Workmen's Compensation Act,[1] a heart attack is a compensable injury as long as the claimant proves that it occurred in the course of employment and was related thereto. Applying such a standard to the cases at bar, I agree that competent medical evidence was introduced to show that the decedent Vincent Squillacioti suffered a fatal heart attack in the course of, and related to, his employment with the Edward S. Pincus Company. Accordingly, I concur in the majority's affirmance of the order of the Commonwealth Court in that case. (No. 523)

With respect to the appeal at No. 570, however, involving the decedent Raymond Lenz, I cannot conclude that the medical evidence was sufficient to establish, in the words of the Commonwealth Court, the "causal connection between decedent's work and his injury and subsequent death."

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 411(1).

*Workmen's Compensation Appeal Board, et al. v. Ayers Philadelphia, Inc.*, 23 Pa.Cmwlth. 249, 252, 351 A.2d 306, 308 (1976). In my mind, that testimony establishes only that the decedent died at work;[2] there is nothing to indicate that the conditions of employment contributed in any degree to the occurrence of the injury. Because no connection between work and the heart attack has been established, compensation benefits were improperly allowed. I must accordingly dissent to that portion of the Court's order which affirms the order of the Commonwealth Court in the appeal at No. 570.

2. The opinion testimony of Dr. Harvey A. Harris, claimant's medical expert, concerning the cause of decedent's death was in part as follows:

Q. Would you now state that opinion and the extent to which the death is related to his work.

A. According to the information that I received the most probable and definite cause of death was acute myocardial infarction due to the suddenness and the way the decedent was found. Based on medical facts, the only way you could prove it one hundred percent, as I said, was to do an autopsy. The fact that the man worked who had a cardiac irregularity and who had hypertensive vascular disease, who had a mild diabetic condition and who had just probably two or three months prior to that had undergone a cataract operation, was at work, overtime, and an operation which is stressful to him—not so much in physical stress as it is in mental stress, the factors are there that would relate to his pressure going up and his heart giving out on him in common terms.

Q. In your opinion what was the cause of his death?

A. The immediate cause was the infarction and the precipitating cause was probably the environment.

Q. What do you mean by "the environment", Doctor?

A. His work. He did not die at home. He did not die on the street. He was at work, at his table, and from my knowledge of Ray Lenz, he was a very dedicated, honest person who gave you an hour and a half work for every hour you paid him.

Furthermore, while Dr. Harris did state that increased stress at work could have precipitated the heart attack, he was unable to state whether the decedent was actually under stress while working.

It is within the competence of a medical expert to give his opinion to the effect that known conditions of stress precipitated a heart attack, but it is not proper for him to speculate that stress conditions associated with the employment existed simply because a heart attack occurred while the employee was at work. I am satisfied that Dr. Harris' testimony in this case was, in essence, nothing more than speculation as to the requisite of a "relationship" between employment and injury.