552 A.2d 1048

**Robert J. McDEVITT, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (RON DAVIDSON CHEVROLET).**

Supreme Court of Pennsylvania.

Argued Sept. 28, 1988.

Decided Feb. 2, 1989.

Reargument Denied March 30, 1989.*

Richard J. Russell, Johnstown, for appellant.

Thomas D. Brown, Scranton, Norman R. Haigh, Secretary, W.C.A.B., Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

* Larsen and Papadakos, JJ., dissent and would grant reargument.

## ORDER

PER CURIAM:

Appeal dismissed as having been improvidently granted.

LARSEN, J., files a dissenting opinion in which PAPADAKOS and STOUT, JJ., join.

PAPADAKOS, J., files a dissenting opinion in which LARSEN, J., joins.

LARSEN, Justice, dissenting.

I dissent. The Commonwealth Court's erroneous interpretation of section 315 of the Workmen's Compensation Act, 77 P.S. § 602 (Purdon's Supp.1988), and the majority's "affirmance" of that interpretation by declaring this appeal to have been improvidently granted, are in conflict with the legislative intent and compensation scheme clearly established by the General Assembly's major substantive amendments to the Act in 1972 and this Court's recent interpretations of those amendments. The erroneous interpretation denies workmen's compensation benefits to an eligible claimant, and partially resurrects, for purposes of the three year time bar period of section 315, the discarded "accident" prerequisite for eligibility for workmen's compensation which was replaced in 1972 with the more general requirement of *"injury* to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto...." Section 301(c)(1), 77 P.S. § 411 (Purdon's Supp.1988).

The facts of record in this case are straightforward and are not in dispute, and the referee's findings are adequately supported by the record. Those findings are as follows. Appellant, Robert J. McDevitt, suffered from a medical condition of "diabetic neuropathy of his lower extremities" which predated his employment with Ron Davidson Chevrolet (Davidson), appellee. This condition caused numbness in appellant's lower extremities and difficulty in walking and maintaining balance. During his employment with Davidson (December 2, 1973—July 23, 1978), appellant suffered

three separate falling injuries in the course of employment injuring, respectively, his knee (torn cartilage), hip (fracture), and on February 23, 1978, his shoulder (dislocation/fracture) which occurred when he slipped on ice in the employer's driveway while working. Appellant returned to work following each of these injuries.

Despite medical advice, appellant returned to work following the shoulder injury and "continued to work with his injured shoulder until July 23, 1978 when he could no longer tolerate his injury." Referee's Fact Finding (F.F.) No. 9. Appellant ceased employment as of that day (July 23, 1978), and filed a claim petition on July 10, 1981. Hearings were held, and the referee examined the medical testimony and other evidence offered by both parties and found that: appellant's pre-existing condition made him "more likely to fall and hurt himself," F.F. No. 18; appellant had "an extremely diminished range of motion in his right shoulder, which [his] Doctor directly attributed to [his] work related fracture of 1978," F.F. No. 21; the "injury to his right shoulder would prevent his return to work as a car salesman," F.F. No. 22; and

claimant is and has been totally disabled as a result of a fractured right shoulder and loss of motion of such shoulder incurred during the course of his employment with defendant-employer on February 23, 1978, when he fell on employer's premises, such disability commencing on July 23, 1978 when claimant could not longer perform his job duties. F.F. No. 25.

Based on these findings, the referee awarded compensation beginning on the date of disability, July 23, 1978. This award was required because appellant's shoulder injury caused by a fall on ice while working at employer's place of business was clearly "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto ..." Section 301(c)(1), 77 P.S. § 411(1).

Davidson defended the claim before the referee solely on the basis that appellant's disability was due to his diabetic

condition and not to injuries sustained at work. Davidson appealed the referee's adverse decision to the Workmen's Compensation Appeal Board (Board), appellee, raising, for the first time, the three year time-bar period of section 315 which provides, in relevant part:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or *unless within three years after the injury, one of the parties shall have filed a petition* as provided in article four hereof.

Without taking additional evidence, the Board vacated the referee's award and dismissed the claim petition, accepting Davidson's argument that appellant's "injury" for section 315 purposes occurred on February 23, 1978, the date of his last *accident* at work. Accordingly, the Board held that his claim of July 10, 1981 was untimely as it was filed more than three years beyond his "injury" of February 23, 1978, even though the claim was filed within three years from the date on which his disability from work commenced (July 23, 1978). Further, the Board held that Davidson had not waived the time-bar of section 315 even though it had failed to raise the issue before the referee.

On appeal, the Commonwealth Court affirmed, agreeing with the Board that appellant's shoulder injury occurred on February 23, 1978 and holding that *that date,* not his date of disability, triggered the three year time-clock of section 315. *McDevitt v. WCAB (Ron Davidson Chevrolet),* 106 Pa.Cmwlth. 207, 525 A.2d 1252 (1987). That court stated "under section 315, however, the date of claimant's disability is irrelevant; it is the date of the *injury* which commences the running of the three-year limitation...." *Id.* at 525 A.2d 1253. It is apparent that the Commonwealth Court in this case equated "accident" with "injury" for purposes of starting the time-clock under section 315. This is absurd, and it flies in the face of the letter, spirit and entire tenor of the 1972 amendments to the Act.

The deletion of the "accident" requirement for compensation eligibility by the legislature in 1972 was no accident and it purposefully worked a major substantive change in the law of workmen's compensation. We made it quite clear in *Pawlosky v. WCAB*, 514 Pa. 450, 525 A.2d 1204 (1987), that "injury" is simply "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto....," 77 P.S. § 411(1), and has no reference to any particular point of accident or on-the-job trauma.

In *WCAB v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1979), this Court rejected the employer's argument that, since the new law did not specifically define "injury," the legislature intended to continue the prior law's requirement that "injury" be defined as "violence to the physical structure of the body." We rejected that argument, stating:

> *Because the time limitations on notice* (77 P.S. § 631–633) *and the statute of limitations* (77 P.S. § 602), as well as 77 P.S. § 411 *specify periods of time which begin to run from the date of the "injury," appellants argue that the legislature intended to continue the prior laws's established concept that injury is an event,* and that therefore "diseases" could not have been intended to be included within the term "injury." *We do not agree.*

479 Pa. at 292, 388 A.2d at 663 (emphasis added). Thus, we specifically stated in *Bernard S. Pincus Co.* (although in a different context) that the "injury" which triggers the three year time-bar period of section 315 is not some event or accident. More recently, in *Kachinski v. WCAB*, 516 Pa. 240, 532 A.2d 374 (1987), (Larsen, J., concurring) this Court reiterated that the compensable "injury" under the Act is the *economic injury, i.e.,* the loss or diminution of earning power and income caused by a claimant's work related disability.

These cases establish that a claimant cannot become eligible for benefits until an injury arising during the course

of employment and related thereto disables him from working—until that time, he has not lost earning power or income because of whatever happened to him at work, and until that time he will obviously not receive workmen's compensation benefits for lost earning power or income (since there has not been any).

There is simply no support for the Board's and Commonwealth Court's interpretation of section 315 which was amended by the legislature in 1972 as part of its major overhaul of the Act. To be consistent with our interpretation of "injury" in all other contexts that we have examined under the Act as amended in 1972, we must interpret "within three years after the injury" to mean within three years after the claimant's disability has commenced. No other interpretation makes sense—suppose a worker was struck by a crane in a steel mill and seriously injured his back; suppose further that this worker was, as our worker in the instant case, a conscientious employee who worked through his pain for quite some time until he could no longer stand it and he became immobilized; and suppose said immobilization was reached exactly three years and one day from the time of the "accident;" finally suppose that unequivocal medical testimony established that his current disability was caused by this accident and consequent injury to his back. Under the Board's, and the Commonwealth Court's reasoning, which has now received the stamp of approval by this Court, this claimant could not file a claim for compensation on the very day his disability commenced since the date of trauma is the date which commences the running of the statute of limitations of section 315. If the worker continued to work for three years or more before becoming finally disabled by a work related accident, *he could never collect compensation benefits* under this interpretation. This decidedly *unhumanitarian* construction of the Act places an unwarranted and unjustifiable judicial restriction on eligibility for benefits which *penalizes* the conscientious worker who manages to keep working despite a work-related injury which *eventually* disables him or her.

In the instant case, appellant had a traumatic work-related accident but he suffered no economic injury at that time because, to his credit, he conscientiously continued to work through the pain and discomfort for some six months until finally his shoulder "froze" and prevented his return to work. *At that point,* on July 23, 1978, *and not before,* he had a compensable injury under the Act. Because he had suffered no economic loss before that time as he gamely continued to work, his injuries were not compensable "injuries" within the meaning of the Act until July 23, 1978. It is manifestly unfair and improper to deny appellant benefits because he did not file a claim within three years of the date of the traumatic "accident" which did not actually disable him or prevent him from work until six months later.

I also believe that it was improper for the Board and the Commonwealth Court to address the issue of timeliness under section 315 and to resolve it against the appellant who had no practical opportunity to present evidence to attempt to demonstrate why section 315 did not operate to bar the claim filed on July 10, 1981. Properly notified, appellant would have attempted to show, inter alia, a continually deteriorating condition and continuing "injuries" from use of his arm at work from February 23 to July 23, 1978. This Court recently addressed the issue of the effect of the failure of a party to raise an issue before a workmen's compensation referee, but failed to reach a majority consensus on whether waiver would always bar the raising of such an issue before the Board on an appeal from a referee's decision. *DeMarco v. Jones & Laughlin Steel Corp.,* 513 Pa. 526, 522 A.2d 26 (1987). This author, in the Opinion Announcing The Judgement of the Court joined by Justice Papadakos, would have held that the employer had waived a defense of res judicata by failing to raise it in the first instance before the referee, stating:

In *Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981), we applied the

rationales underlying the waiver doctrine to administrative proceedings, stating:

> The *Dilliplaine* [*v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974)] and *Clair [Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974)] rationales are perfectly apposite in administrative law cases as well: the administrative law tribunal must be given the opportunity to correct its errors *as early as possible;* diligent preparation and effective advocacy before the tribunal must be encouraged by requiring the parties to develop complete records and advance all legal theories; and the finality of the lower tribunals' determinations must not be eroded by treating each determination as part of a sequence of piecemeal adjudications.

*Id.*, 496 Pa. at 117, 436 A.2d at 180–81 (emphasis added).

The referee not only functions as the factfinder in the workmen's compensation adjudicatory system, he or she is also charged with making a record of hearings, and such findings of fact and conclusions of law "as the petition and answers and the evidence produced before him and the provisions of this act shall, in his judgment, require." 77 P.S. § 833. Appeals are taken on the basis of the record produced before the referee, and that record is necessarily limited to the claim petition, the answers, and the evidence. Legal issues and facts not presented to the referee cannot be asserted on appeal without sacrificing the integrity, efficiency, and orderly administration of the workmen's compensation scheme of redress for work-related injury and occupational disease. The administrative law tribunal, here, the referee, was not given the opportunity to address the res judicata defense.

We hold, therefore, that the Board erred as a matter of law in considering appellee's res judicata defense, as that defense was waived.

*Id.* 513 Pa. at 531–32, 522 A.2d at 29.

In the instant case, I believe it particularly improper to address the section 315 defense and resolve it against appellant who was deprived of an opportunity to present

additional medical evidence to establish that his "injury" in fact occurred on July 23, 1978. Appellant's Brief before this Court, at 9, states:

It is certainly not surprising that a Referee who was not asked to address the issue of timeliness by the Defendant insurer would issue an award lacking clarity and specific findings that would be anticipated had such issue been addressed either in the pleadings or at hearing. *Likewise, Claimant and his counsel being faced solely with the contention that Claimant's disability was a result of natural progression of an underlying disease process did not attempt to clarify the testimony regarding progression of claimant's condition as the result of his return to work nor request specific findings on the date of injury and limitation of action issue.* Likewise, Claimant and his counsel had no reason to expound upon testimony which would establish that the three year limitation was extended by the activities of the workmens [sic] compensation insurer since again timeliness of the petition was not asserted as an issue.

To hold that an issue regarding a defense has not been waived is one thing, but to resolve that issue against a party who has had no opportunity to rebut that defense magnifies the unfairness to the party against whom that issue was resolved.

For the foregoing reasons, I would reverse the order of the Commonwealth Court and I would reinstate the referee's award of compensation to appellant.

PAPADAKOS and STOUT, JJ., join in this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I join in Mr. Justice Larsen's dissenting opinion in this case, but write separately in order to express my amazement that this Court seems prepared to ignore a critical holding in the Commonwealth Court's instant decision that is in turn based on a premise wholly unwarranted and, in my judgment, wholly unsound. I, of course, agree with Mr.

Justice Larsen that the three year statute of limitations defense (under Section 315 of the Workmen's Compensation Act, 77 P.S. § 602), asserted by the employer in this case, should have been raised at the hearing before the referee— the very first opportunity on the administrative level at which to do so. Since it was not raised promptly and diligently at that time, it was waived. That, at least, is the result demanded by the relevant administrative rules. See, for example, 34 Pa.Code § 131.2, 1 Pa.Code §§ 35.48–35.50. See also, *DeMarco v. Jones and Laughlin Steel Corp.*, 513 Pa. 526, 522 A.2d 26 (1987), Mr. Justice Larsen's Opinion Announcing the Judgment of the Court.

The Commonwealth Court's decision in the instant case, *McDevitt v. W.C.A.B. (Ron Davidson Chevrolet)*, 106 Pa. Commonwealth Ct. 207, 525 A.2d 1252 (1987), acknowledges a problem with *DeMarco*. It is dismissed in a footnote, however.

> We note our Supreme Court's recent plurality decision in *DeMarco v. Jones & Laughlin Steel Corporation*, [513] Pa. [526], 522 A.2d 26 (1987), where the decision of the Court was that the employer's failure to raise the defense of *res judicata* before the referee constituted a waiver of that issue. *Id.* at [531], 522 A.2d at 28–29. We need not pass upon the effect of *DeMarco*, however, because the issue of whether a claim has been timely filed under Section 315 is jurisdictional and may be raised at any time before the compensation authorities. *Harrington v. Mayflower Manufacturing Co.*, 173 Pa. Superior Ct. 130, 96 A.2d 180 (1953).

525 A.2d at 1253–1254, n. 4.

How did the statute of limitations defense under Section 315 become jurisdictional? The Commonwealth Court addresses *that* question in the main body of their opinion, to-wit:

> Claimant contends that because Employer did not raise the statute of limitations before the referee, it is waived. We do not agree. The limitation contained in Section 315 is not a technical statute of limitations, which in conformi-

ty with common law practice, must be pled affirmatively as a defense. *Harrington v. Mayflower Manufacturing Co.*, 173 Pa. Superior Ct. 130, 96 A.2d 180 (1953). "It is strictly a statute of repose which completely extinguishes the right and not merely the remedy, and may be invoked even though it has not been pleaded." *Id.*, 173 Pa.Superior Ct. at 132, 96 A.2d at 181. Since the issue of whether a claim is barred by Section 315 is one that may be raised at any time before the compensation authorities, *Harrington*, the Board was correct in holding that the issue had not been waived by the Employer.

525 A.2d at 1253 (footnote omitted).

A review of *Harrington* reveals that the idea that we are dealing with a statute of repose here, and hence a jurisdictional statute, originated in earlier Superior Court cases and *Harrington* cites only one Supreme Court case as authority for this conclusion, namely, *Calabria v. State Workmen's Ins. Fund*, 333 Pa. 40, 3 A.2d 322 (1939). A careful review of *Calabria*, however, reveals that we said no such thing in that case!

I can only conclude that by a careless process of bootstrapping, the Superior Court, and now the Commonwealth Court, has elevated and enshrined a dubious proposition of law on which this Court has never spoken; but it is one which has unfortunate and dire consequences in this case. At the very least, we should review the question. I am convinced that the idea that this statute of limitations is absolute and jurisdictional, and of an exalted stature, comes from an earlier era that was anti-workingman; and from an era that was also unwilling to give full deference to the integrity of the administrative process. Times have changed, however, and there is no reason now, if there ever was one, to so favor this particular defense. That we might hold otherwise would be error in my judgment. That we will not even review the matter and set the authorities aright is tragic.

LARSEN, J., joins this dissenting opinion.