623 A.2d 394

**ROBERT W. BORSCHELL PAINTING, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (DEMURO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 22, 1993.

Decided March 10, 1993.

Reargument Denied April 27, 1993.

158

J. Shane Creamer, Jr., for petitioner.

Norman Weinstein, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge

NARICK, Senior Judge.

Robert W. Borschell Painting (Employer) appeals from the order of the Workmen's Compensation Appeal Board (WCAB) that affirmed the referee's grant of fatal claim benefits to Joan DeMuro (Claimant) after the death of her husband, Joseph DeMuro (Decedent). We affirm.

Decedent worked for Employer as a painting estimator. Two weeks prior to his death, Decedent requested that Employer calculate his bonus commission. Decedent expected his bonus to be approximately $42,000.00. On August 5, 1986, Employer told Decedent that he was not entitled to a bonus but rather that he owed the Employer $11,000.00. Four days later, while in the course of his employment, Decedent died. The official cause of death was listed as "sudden cardiac death." No autopsy was performed.

Claimant filed a fatal claim petition, contending that Decedent's sudden cardiac death was precipitated by "stress" which resulted from the news that he would not receive the expected bonus.

Before the referee, Claimant introduced the testimony of the following witnesses: Bernadette Jackominic, secretary for Employer, who testified that she had told Decedent the news of his bonus and that Decedent's personality changed from that point on; Robert Wolf, M.D., who treated Decedent for hypertension from 1978 through 1986; Richard Gomberg, D.O., a Board certified cardiologist; and Allen Greenspan,

M.D., a Board certified internist with subspecialty in cardio-vascular diseases. Claimant's experts agreed that Decedent exhibited risk factors that might predispose him to suffer a cardiac event; however, based upon a reasonable degree of medical certainty, the cardiac event which resulted in Decedent's death was precipitated by stress, induced by the controversy surrounding his anticipated bonus.

Employer presented the testimony of Joel Morganroth, M.D., and Jean C. Borschell, who testified Decedent's personality did not change after the news of his bonus. Dr. Morganroth testified that the four days between the stressful event and Decedent's death was outside what he believed was the limit for temporal relationship of a stressful event to any cardiac event.

The referee, finding Claimant's witnesses' testimony unequivocal, credible and persuasive granted fatal claim benefits. The WCAB affirmed.

On appeal,[1] Employer argues that the Claimant's medical experts' testimony was equivocal and, therefore, could not be the basis for the referee's findings of fact. Employer also argues that the referee's allowance of Dr. Greenspan's fee was neither reasonable nor necessary.

Whether medical testimony is equivocal is a conclusion of law, fully reviewable by this Court. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 498 A.2d 800 (1985). Employer asserts that the medical testimony introduced by Claimant was speculative and equivocal because the experts did not agree on an actual cause of death. In heart attack cases where the causal connection between the decedent's work and his sudden cardiac death is not obvious, the connection must be established by unequivocal medical testimony. *Faust v. Workmen's Compensation Appeal Board (New Hanover Township)*, 55 Pa.Commonwealth Ct. 285, 422 A.2d 1246 (1980).

---

1. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

Claimant presented expert testimony that Decedent suffered a cardiac event that resulted in sudden cardiac death and that the work-related stress was a substantial factor in causing the cardiac event and the sudden cardiac death. Employer argues that because Dr. Gomberg believed myocardial infarction caused Decedent's death and Dr. Greenspan believed that Decedent died from ventricular fibrillation that the referee erred in finding that work-related stress caused Decedent's death. We do not agree. Whether the event itself was a myocardial infarction or a ventricular fibrillation is irrelevant for purposes of legal causation. What is relevant is that the Claimant's experts testified unequivocally that the work-related stress event was a substantial factor in causing Decedent's sudden cardiac death.

If a decedent is performing his usual job assignment at the time of the fatal heart attack, which is confirmed by competent medical testimony, and such testimony relates a causal connection between the decedent's work and the cardiac event, then the claimant is entitled to compensation. *Workmen's Compensation Appeal Board (Squillacioti) v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978); *Plumbers Contractors, Inc. v. Workmen's Compensation Appeal Board (Lewellyn)*, 43 Pa.Commonwealth Ct. 338, 402 A.2d 555 (1979). Here, Decedent was performing his usual job assignment at the time of death. Claimant and Ms. Jackominic testified as to the change in Decedent's personality after receiving the news about his bonus. Claimant's experts testified unequivocally that Decedent died because of the stress of learning that he was not entitled to a bonus. Although Employer's witness testified that she did not observe any change in Decedent's personality, we shall not indulge in the process of weighing evidence and resolving conflicts in testimony, but instead will defer to the referee's findings unless there is no support for them. *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973). Our review of the record confirms that the finding that Decedent's death was work-related is supported by substantial evidence.

■ Employer further presses that both experts' testimony was equivocal. Employer asserts that Dr. Greenspan's testimony was equivocal because he waivered on the type of stress Decedent suffered.[2] Because the entire medical testimony must be reviewed as a whole, a "final decision should not rest on a few words taken out of context of the entire testimony." *Wilkes–Barre v. Workmen's Compensation Appeal Board (Scott)*, 54 Pa.Commonwealth Ct. 230, 234, 420 A.2d 795, 798 (1980) *citing Martinique v. Workmen's Compensation Appeal Board (Girardi)*, 45 Pa.Commonwealth Ct. 67, 404 A.2d 778 (1979). Reviewing Dr. Greenspan's testimony as a whole, he unequivocally opined that Decedent's death was caused by the work-related stress.

Employer also asserts Dr. Wolf's testimony was equivocal because of the following statement:

2. Q. In other words, you can't say within a reasonable degree of medical certainty that he was suffering from chronic stress?
A. No, probably not on the basis of the information that we have.
Q. Now, doctor getting then to acute stress, which is what I believe we'd be left with, wouldn't you agree with me that there should be a temporal relationship between the stress or incident and the actual sudden cardiac death?
A. Well, that would assume, you know, when you are talking about chronologic long-term stress, we're also talking about the possibility that the acute event that occurred, the major life change did not produce some ongoing stress over that following week. I think we can make a reasonable conclusion that, in fact, it did.
We're playing games with words. If we're saying chronic is longer than X days or longer than X hours, I would argue that, in fact, he probably was under some degree of quote, chronic stress in the period of time following the disclosure that he wasn't going to get a bonus until his sudden death, and that the acute event that perhaps was associated with what ultimately was a sudden death was that disclosure. And then he became obsessed to some degree with what was going on and there was a four or five-day period of some degree of chronic stress and the so-called less than severe or the initial bereavement or work-related stress of the major type that triggered off his acute demise, and that was the stress that occurred at the time of him driving across the bridge. I think that fits the pattern perfectly fine.
So, in actual fact, I would have to *retract* and say yes, there was chronic stress.

\*   \*   \*   \*   \*   \*

(263a–264a).

I think the stress would be a probable cause of a heart attack if it occurred under those circumstances as was just delineated. As far as the certainty of the stress, definitely causing his heart attack, that, I don't think any medical expert could possibly testify unless the man was being monitored at the same time, which obviously he wasn't but knowing his particular history and with a question of underlying coronary artery disease, and a long history of hypertension, a precipitating stress factor on top of that could certainly cause a coronary event. And if this was the only exciting factor that would cause his stress, then I would have to presume that the coronary event was caused by the factors stated previously.

(68a).

■ Unqualified medical certainty is not required in heart attack cases. *Genua v. Workmen's Compensation Appeal Board (WSEE Television)*, 75 Pa.Commonwealth Ct. 133, 461 A.2d 351 (1983). Where the doctor testifies to both an underlying disease of the heart which is not work-related and a precipitating cause of the heart attack which is work-related, taking into consideration the doctor's testimony as a whole, then the claimant may receive benefits. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch)*, 97 Pa.Commonwealth Ct. 346, 509 A.2d 942 (1986).

■ Employer also argues that Dr. Greenspan's testimony was based upon facts not in the record because Dr. Greenspan based his opinion on third-hand information provided to him by Claimant that Decedent was a Type–A personality when others testified to his general jovial nature. In *Henderson v. Workmen's Compensation Appeal Board (County of Allegheny)*, 78 Pa.Commonwealth Ct. 243, 467 A.2d 410 (1983), we established upon what information a medical witness could rely on rendering his opinion.

It is not required that the medical witness' testimony as to causation be based upon a history given the physician by the patient. The expert's medical opinion may be based on assumed facts appearing in the record either recited to him by counsel in the form of a hypothetical question or, what

amounts to the same thing, on facts learned by reading the relevant portions of the record testimony.

*Id.* at 245, 467 A.2d at 411 (citations omitted).

Dr. Greenspan carefully reviewed the record of testimony to form his opinion, which, upon our review showed Decedent to be a very hard-working individual, a characteristic of many type-A personalities. Under *Henderson,* Dr. Greenspan's opinion has an acceptable basis.

■ Finally Employer argues that the award of $6,100 to Dr. Greenspan was not reasonable or necessary because the other experts testified for much less. Employer offers no legal support for this assertion. As Claimant points out, Dr. Greenspan testified last among the witnesses and, therefore, it was necessary for him to review voluminous material in order to render his opinion. Dr. Greenspan testified, regarding his hourly fees, which the referee found to be reasonable and necessary. The referee's findings are based upon substantial evidence and we are without power to disturb them. *LoRubbio v. Workmen's Compensation Appeal Board,* 49 Pa.Commonwealth Ct. 529, 411 A.2d 866 (1980).

Accordingly, we affirm.

## ORDER

AND NOW, this 10th day of March, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.